COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman, Willis, Elder, Bray,
     Fitzpatrick, Annunziata and Overton
Argued at Richmond, Virginia


DOUGLAS McGEE, JR.
                                        OPINION BY
v.        Record No. 0104-95-2    JUDGE SAM W. COLEMAN III
                                        JULY 8, 1997
COMMONWEALTH OF VIRGINIA


UPON REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
        Walter W. Stout, III, Judge

    Cullen D. Seltzer, Assistant Public Defender
    (David J. Johnson, Public Defender, on
    brief), for appellant.

    Marla Graff Decker, Assistant Attorney
    General (James S. Gilmore, III, Attorney
    General, on brief), for appellee.


    The defendant, Douglas McGee, Jr., was convicted in a bench

trial of one count of possession of cocaine with intent to

distribute in violation of Code § 18.2-248.  A panel of this

Court affirmed the conviction, holding that the defendant was not

seized for Fourth Amendment purposes before he voluntarily

consented to the search which resulted in the recovery of

cocaine.  See McGee v. Commonwealth, 23 Va. App. 334, 477 S.E.2d

14 (1996).  Upon rehearing en banc, we hold that the trial court

erred in denying the defendant's motion to suppress the cocaine

because it was seized as the result of an illegal search of the

defendant.

BACKGROUND

When viewed in the light most favorable to the Commonwealth as the prevailing party, the evidence proved that Officer Norris I. Loperl of the Richmond Police Department received a radio dispatch that a black male wearing a white t-shirt, black shorts, and white tennis shoes was selling drugs on a corner near 5001 Government Road in Richmond.  The dispatch was based on a tip from an anonymous informant, who did not relate the circumstances under which the drugs were being sold, the identity of the seller, the nature of drugs being sold, or where the drugs were located.

Approximately two minutes after receiving the dispatch, Loperl and two other officers, all of whom were in uniform and armed, arrived at 5001 Government Road in two marked police cruisers.  Immediately after parking the police cruisers, the three officers approached the defendant, who was sitting on a porch in front of a store.  The defendant and a female companion were the only persons that the officers observed in the vicinity.  The officers did not observe the defendant's activity prior to approaching him.  At trial, Officer Loperl testified that he did not know whether the defendant was wearing a white t-shirt, black shorts, and tennis shoes as reported in the anonymous tip.

After exiting his vehicle, Officer Loperl approached the defendant and "stated to him that I had received a call that [he] was on this corner selling drugs and [that he] matched the

description" of the individual who had been reported as selling drugs. According to Loperl, the defendant was free to leave, although the officers did not expressly so inform the defendant. Loperl testified that the officers did not block the defendant's path in any direction or draw their weapons.

Loperl then "asked [the defendant] could I pat him down to make sure he didn't have any weapons on him." Loperl testified that he asked the question in the same tone of voice he was using in court. The defendant responded by standing up and extending his arms in front of him with both fists clenched. Loperl patted the defendant down and found no weapons. Since Officer Loperl believed the defendant could have been holding a "small pocket knife" or "a razor" in his closed fists, Loperl asked the defendant to open his hands. Although Loperl could not remember the exact words used, he testified that, "I know I asked him. I know I didn't tell him. I asked him." The defendant opened his hands, which contained money, a torn ziplock bag, and "a little piece of white substance." Loperl then placed the defendant under arrest and, in a search of the defendant incident to that arrest, Loperl found twenty-five bags containing crack cocaine in the defendant's trousers.

In a written opinion, the trial judge held that the police officers' encounter with the defendant constituted an investigatory stop but that Officer Loperl had a reasonable, articulable suspicion that the defendant was involved in criminal

activity.  Thus, the trial judge ruled that, because the police did not restrict the defendant's movement or engage in coercive conduct, the brief detention was reasonable and defendant's consent to Loperl's request to open his hands was voluntary and, therefore, the fruits of the search were admissible.

ANALYSIS

In reviewing a trial court's denial of a motion to suppress, "[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error."  Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980).  "Ultimate questions of reasonable suspicion and probable cause to make a warrantless search" involve questions of both law and fact and are reviewed de novo on appeal.  Ornelas v. United States, 116 S. Ct. 1657, 1659 (1996).  In performing such analysis, we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.  Id. at 1663.[1]  We analyze a trial

---

[1] The Ornelas case holds that findings of historical fact are reviewed on appeal only for "clear error."  However, "'[c]lear error' is a term of art derived from Rule 52(a) of the Federal Rules of Civil Procedure, and applies when reviewing questions of fact" in the federal system.  Ornelas, 116 S. Ct. at 1661 n.3.  In Virginia, questions of fact are binding on appeal unless "plainly wrong."  Quantum Div. Co. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991); Naulty v. Commonwealth, 2 Va. App. 523, 527, 346 S.E.2d 540, 542 (1986).

- 4 -

judge's determination whether the Fourth Amendment was implicated by applying de novo our own legal analysis of whether based on those facts a seizure occurred. See Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (en banc); see also Watson v. Commonwealth, 19 Va. App. 659, 663, 454 S.E.2d 358, 361 (1995).

Police-citizen confrontations generally fall into one of three categories. Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 869-70 (1992); Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988). First, there are consensual encounters which do not implicate the Fourth Amendment. Iglesias, 7 Va. App. at 99, 372 S.E.2d at 173. Next, there are brief investigatory stops, commonly referred to as "Terry" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot. United States v. Sokolow, 490 U.S. 1, 7 (1939). Finally, there are "highly intrusive, full-scale arrests" or searches which must be based upon probable cause to believe that a crime has been committed by the suspect. Id.; see also Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 746-47 (1995).

We find, as did the trial court, that the defendant's encounter with the police was not consensual. Therefore, as the trial court held, the defendant was seized when the three officers approached him on the porch and told him that they had a report that he "was on the corner selling drugs and [that he]

matched the description."  However, we disagree with the trial court's ruling that the police had reasonable, articulable suspicion to detain the defendant.  Therefore, because the request to frisk the defendant and his "consent" to be searched were the result of an illegal detention, the cocaine seized from him should have been suppressed.

An encounter between a law enforcement officer and a citizen in which the officer merely identifies himself and states that he is conducting a narcotics investigation, without more, is not a seizure within the meaning of the Fourth Amendment but is, instead, a consensual encounter.  See Florida v. Royer, 460 U.S. 491, 497 (1983); Williams v. Commonwealth, 21 Va. App. 263, 266, 463 S.E.2d 679, 681 (1995).  A seizure occurs when an individual is either physically restrained or has submitted to a show of authority.  California v. Hodari D., 499 U.S. 621, 625 (1991); Ford v. City of Newport News, 23 Va. App. 137, 142, 474 S.E.2d 848, 850 (1996).

> The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals."  As long as the person to whom questions are put remains free to disregard the question and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

United States v. Mendenhall, 446 U.S. 544, 553-54 (1980); see Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 647

- 6 -

(1992).  Whether a seizure has occurred for Fourth Amendment purposes depends upon whether, under the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave.  Mendenhall, 446 U.S. at 554.

When the police expressly inform an individual that they have received information that the individual is engaging in criminal activity, the police "convey a message that compliance with their requests is required," Florida v. Bostick, 501 U.S. 429, 435 (1991), and "that failure to cooperate would lead only to formal detention."  United States v. Berry, 670 F.2d 583, 597 (5th Cir. 1982).  See also Royer, 460 U.S. at 501 (holding that the accused was seized "when the officers identified themselves as narcotics agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room") (emphasis added); United States v. Glass, 741 F.2d 83, 85 (5th Cir. 1984) (holding that the accused was seized when "the officers informed [him] that [he] was suspected of illegal activity"); United States v. Manchester, 711 F.2d 458, 460 (1st Cir. 1983) (finding a seizure where the agents confronted the accused with their suspicions that he was involved in drug trafficking); State v. Ossey, 446 So. 2d 280, 285 (La.) (holding that there was a seizure where the accused "was told that he was the focus of investigation"), cert. denied, 469 U.S. 916 (1984).

Thus, when a police officer confronts a person and informs the individual that he or she has been specifically identified as

a suspect in a particular crime which the officer is investigating, that fact is significant among the "totality of the circumstances" to determine whether a reasonable person would feel free to leave.[2] When confronted with an accusation from police, such as, "we know you are selling drugs from this location, let us search you," no reasonable person would feel free to leave. Whether a seizure occurs must be determined by evaluating the facts of each case to determine whether the manner in which the police identified the individual as a suspect conveys to the person that he or she is a suspect and is not free to leave.

In this case, Officer Loperl's statement to the defendant did not merely convey a message that the officers were conducting a general investigation in response to a report of drug dealing. Rather, Loperl specifically identified the defendant as the subject of their drug investigation. See United States v. Saperstein, 723 F.2d 1221, 1226 (6th Cir. 1983) (finding a seizure where the agent stated "that he had information concerning the appellant and his probable activities as a drug courier"); Wilson v. People, 670 P.2d 325, 334 (Cal. 1983) (finding a seizure where "the officer advised [the accused] that he had information that [the accused] was carrying a lot of

_____

[2] Other factors that could be considered include the number of officers present, whether the officers displayed weapons, and physical circumstances of the encounter. Mendenhall, 446 U.S. at 554.

drugs"), cert. denied, 466 U.S. 944 (1984).  In addition to Officer Loperl's statement to the defendant, the evidence proved that three uniformed officers arrived in two marked police cruisers and confronted the defendant.  See Satchell, 20 Va. App. at 650, 460 S.E.2d at 257.  Furthermore, the trial court, which found that a seizure had occurred, had the opportunity to evaluate the tone of voice that Officer Loperl said he used in speaking to the defendant.  See id. at 648, 460 S.E.2d at 256 (holding that "[t]he trial court has before it the living witnesses and can observe their demeanors and inflections").  The officers did not by their words or actions suggest that the defendant was free to leave.  The unmistakable message conveyed to the defendant was that the officers had reason to suspect that he was selling drugs and that they were detaining him to investigate his activity.  A reasonable person would have believed, as the trial court found, that he or she was being detained and was required to open his or her hands as requested by the officers.  Upon our de novo review, we find that the evidence supports the finding that the officers seized the defendant by their show of authority.  The dispositive question then is whether the officers had a reasonable basis to suspect the defendant of criminal activity to justify the investigatory stop.

If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal

activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures. See Terry v. Ohio, 392 U.S. 1, 27 (1968). The justification for stopping the individual need not rise to the level of probable cause, but must be more than an "inchoate and unparticularized suspicion or 'hunch.'" Id. at 27.

Contrary to the trial court's finding, the evidence is insufficient to prove that the investigatory detention was "justifiable" and based upon reasonable, articulable suspicion. In Alabama v. White, 496 U.S. 325 (1990), the United States Supreme Court held that a law enforcement officer is justified in relying upon information from an anonymous tipster in order to briefly detain a suspect for inquiry and investigation only if the anonymous information is "sufficiently corroborated" to provide it some indicia of reliability. Id. at 331. "[A]lthough the police do not have to verify every detail provided by an anonymous informant, '[s]ignificant aspects of the informer's information must be independently corroborated.'" Gregory v. Commonwealth, 22 Va. App. 100, 106, 468 S.E.2d 117, 120 (1996) (quoting Bulatko v. Commonwealth, 16 Va. App. 135, 137, 428 S.E.2d 306, 307 (1993)).

In Gregory, the police officer received an anonymous tip that an individual fitting a certain description was flagging down cars and selling drugs. When the officer arrived at the

reported location, and after observing that the accused fit the description provided by the informant, the officer verified that the accused was occupying the described vehicle from which he allegedly was selling drugs. At that point, the officer saw Gregory exit the car and begin to walk away from it and from the officer, repeatedly looking over his shoulder at the officer as he did so. Id. at 108, 468 S.E.2d at 121.

In Gregory, we found that the officer verified or observed the description of the suspect and his car, that the defendant was present during the early morning hours at a location where frequent complaints of drug dealing had been received, the defendant acted suspiciously and furtively when the police officer arrived, and refused to show both hands to the officer when he approached. We held, based upon the informant's tip and corroborating information developed, that the officer was justified in believing that Gregory was selling drugs. Id. at 109, 468 S.E.2d at 121–22.

Here, Officer Loperl received an anonymous tip that a black male wearing a white t-shirt, black shorts, and white tennis shoes was selling drugs. Officer Loperl did not observe any suspicious activity or furtive gestures by the defendant that tended to verify or corroborate the citizen's tip that the defendant was engaged in criminal activity. At most, Officer Loperl only knew that the defendant may have fit the description of the person that the anonymous tipster observed. However,

- 11 -

Loperl did not observe any suspicious conduct or behavior or furtive gestures by the defendant. He observed nothing that suggested in any way that the defendant may have been or was about to be engaged in criminal activity.

On these facts, no credible evidence supports the trial court's finding that the investigatory stop was "justifiable." The police officers had no reason, other than a report from an anonymous person, to suspect that the defendant was selling drugs. No evidence established the identity or reliability of the anonymous tipster or explained how the tipster obtained the reported information. The evidence provides no reason why the tipster's conclusory assertion was worthy of being believed. The officers did not possess a basis to conclude that the anonymous informant was reliable and, therefore, did not have reasonable and articulable suspicion to conduct a Terry stop.

Because the seizure of the defendant was unlawful, the cocaine that was obtained from him in the "consent" search should have been suppressed as "fruit of the poisonous tree." Commonwealth v. Ealy, 12 Va. App. 744, 754, 407 S.E.2d 681, 687 (1991). Consent to search obtained as the result of an illegal detention is "not an independent source of the evidence, but rather [is] an exploitation of the unlawful [stop]." Id. at 757, 407 S.E.2d at 689.

Accordingly, we reverse the conviction and dismiss the charge.

<u>Reversed and dismissed</u>.