COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Bray
Argued at Richmond, Virginia


JAMES LEE STEVENS

v.  Record No. 2416-97-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE JAMES W. BENTON, JR.
NOVEMBER 10, 1998


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
James M. Lumpkin, Judge Designate

Ronald M. Maupin (Gardner, Maupin & Sutton,
P.C., on brief), for appellant.

Michael T. Judge, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


The trial judge convicted James Lee Stevens of aggravated
sexual battery, see Code § 18.2-67.3, and lasciviously exposing
his genital parts to a child under the age of fourteen, see Code
§ 18.2-370(1).  On appeal, Stevens contends that (1) the trial
judge erred in refusing to suppress his confession and (2) the
evidence was insufficient to corroborate his confession to
exposing his genital parts to the child.  For the reasons that
follow, we affirm the convictions.

                                I.

     The standard of review of the trial judge's ruling on the
motion to suppress is as follows:
          In reviewing a trial [judge's] denial of a
          motion to suppress, "[t]he burden is upon
          [the defendant] to show that th[e] ruling,

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

> when the evidence is considered most favorably to the Commonwealth, constituted reversible error." "Ultimate questions of . . . both law and fact . . . are reviewed <u>de novo</u> on appeal. In performing such analysis, we are bound by the trial [judge's] findings of historical fact unless "plainly wrong" or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.

<u>McGee v. Commonwealth</u>, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (<u>en</u> <u>banc</u>) (citations omitted).

The evidence at the suppression hearing proved that Deputy Sheriff Gregory Call went to Ashton Berry's residence on January 2, 1997, because Berry and James Stevens had gotten into an altercation. Berry told the deputy sheriff that Stevens, who rented a room in Berry's residence, had sexually assaulted Berry's children. The deputy sheriff saw Stevens lying on his stomach on the kitchen floor rocking back and forth with both arms extended over his head. Although the deputy knew Stevens and was aware that Stevens was an epileptic, he told Stevens to get up because he believed Stevens was not having an epileptic seizure. When Stevens immediately stood, the deputy sheriff noticed a small gash on Stevens' forehead that was not bleeding. The deputy sheriff testified that Stevens spoke coherently and was responsive to his questions. When Berry made the sexual allegation against Stevens, Stevens responded that he "didn't do anything."

After the rescue squad took Stevens to the hospital, the

deputy sheriff went to the hospital and located Stevens on a gurney near the emergency room. The deputy sheriff testified that Stevens was "awake, conscious and oriented" while waiting to be treated. Based on numerous conversations with Stevens in the ten years he had known Stevens and on a prior occasion when he arrested Stevens for being drunk in public, the deputy testified that Stevens' speech patterns and habits at the hospital were the same as he had always known them to be. When he asked Stevens how he was feeling, Stevens said his head hurt.

The deputy sheriff read Stevens his <u>Miranda</u> rights, asked Stevens if he understood his rights, and asked Stevens whether he wanted to talk about Berry's allegations. Stevens said he understood his rights and would talk without an attorney.

When the deputy sheriff asked Stevens if he had touched the "privates" of the two boys, aged 3 and 4, Stevens said he "didn't know anything about it." In response to the deputy sheriff's questioning, Stevens said he was in his room on New Year's Eve talking on the telephone with a "sex woman" and masturbating. Stevens said he heard a noise behind him, saw the boys standing in his room, and continued to masturbate for thirty minutes while the boys were in the room.

Detective Robert Jones arrived at the hospital and asked Stevens whether the deputy sheriff had informed him of his <u>Miranda</u> rights. Stevens responded "yes" and said he would talk to Detective Jones without a lawyer. When the detective told

Stevens that the younger boy said Stevens touched his penis, Stevens denied doing so. However, Stevens again admitted that the boys were in the room when he spoke on the telephone and masturbated. When the detective asked Stevens how the boys' pants got down, Stevens said he didn't know and said he pulled up the older boy's pants after he finished masturbating. Stevens also said he may have touched the younger boy's penis when he pulled up the boy's pants. The detective asked Stevens if the boys were imitating what he was doing. Stevens responded "yes" and said he was "show[ing] them how to do it right." Stevens denied touching the older boy.

After the detective left the hospital to obtain arrest warrants, the hospital personnel gave Stevens Novocain, put stitches in his head wound, and released him. The deputy sheriff testified that Stevens did not exhibit any physical distress after he was discharged from the hospital and taken to the magistrate's office.

A psychological evaluation of Stevens, which was performed by Dr. Frank DeForest, a licensed clinical psychologist, was admitted as evidence. In his report, Dr. DeForest noted the following:

> [Stevens] has been diagnosed in the past as functioning in the mildly retarded range with respect to verbal reasoning ability, and persons with intellectual impairments are often perceived to be particularly susceptible to influence from others. However, such acquiescent tendencies were not especially noticeable during the interview, and his attribution of malevolent motives to

- 4 -

several of the parties involved is not consistent with the blindly trusting attitude presumed to underlie acquiescence.

Noting that "there is reason to suspect that the basis for [Stevens'] apparent intellectual limitations is organic, being the result of poisoning as a small child," Dr. DeForest stated, however, that Stevens' "limitations are not consistent across areas of functioning." Dr. DeForest noted that, despite Stevens' lengthy history of being treated as mentally retarded, Stevens was, "in many spheres, . . . able to function at the level of someone with average ability."

According to Dr. DeForest, Stevens' failure to take his seizure medication had not had any effect on his "reasoning ability." Dr. DeForest noted that in the absence of evidence that Stevens' "orientation and functioning" had been affected by the blow to his head, Stevens "most likely understood his rights adequately, was able to weigh his options sufficiently to make an intelligent choice and was not unduly susceptible to being intimidated or duped into giving a statement." He reported that Stevens recalled having his rights read to him prior to giving the police a statement and that Stevens gave Dr. DeForest a "nearly verbatim recitation of the Miranda warning." When Dr. DeForest asked Stevens whether he understood the meaning of the "right to remain silent," Stevens replied, it "means I can talk to him or talk to my attorney."

Barbara Westerby testified that Stevens, whom she has known

for fifteen years, will not take a bath, change his underwear, or change his clothes without someone making him do so. She also testified that Stevens behaves like a five year old. In a similar vein, Hazel Dickinson testified that Stevens "is a man in a six year old body. He thinks like a child. To me, he thinks like a child. And he -- if you tell him to go jump the moon, he will try to jump it. I mean, he'll do whatever you tell him to do." Julia May Higham testified that Stevens has the mental capacity of an eight year old, cannot dress himself, and must be told to bathe and shave.

Stevens, who is thirty-seven years old and has a tenth grade education, testified extensively at the suppression hearing. He testified that when he was three years old, he and his stepsister drank from a water hose contaminated with pesticide. Stevens' stepsister died. He testified concerning the events that led to his placement in a foster home and his medication. Although he should take Dilantin for epileptic seizures and hyperactivity, on January 2, 1997, when the police questioned him, he had not taken his epilepsy medicine in six months. Stevens testified that after Berry pushed him into a kitchen table, causing an injury to his head, he had a seizure.

Stevens testified that the deputy sheriff read <u>Miranda</u> rights to him prior to the questioning at the hospital. He said that he understood his <u>Miranda</u> rights but could not remember whether the deputy sheriff asked him if he wanted to have a

lawyer present.  Stevens testified that after he denied Berry's accusations, "[the deputy sheriff] kept on, kept on, until I just could not take it any more, and [I] said 'Look, maybe I accidentally touched him somewhere when I pulled his pants up,' because [the deputy sheriff] kept pressuring me."  Stevens testified that the deputy sheriff made him confess and that "I didn't want to say, you know, I touched him when I didn't touch him."

## II.

Stevens contends that the trial judge's refusal to suppress his statement was erroneous because the statements to the police were not voluntary.  "For a confession given during custodial interrogation to be admissible, the Commonwealth must show that the accused was apprised of his right to remain silent and that he knowingly, intelligently, and voluntarily waived that right."  Green v. Commonwealth, 27 Va. App. 646, 652, 500 S.E.2d 835, 838 (1998).  "[I]n determining voluntariness, [the test to be applied] is whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or . . . whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.'"  Stockton v. Commonwealth, 227 Va. 124, 140, 314 S.E.2d 371, 381 (1984) (citation omitted).

Stevens' "relatively low intelligence and limited education [are] factors to be weighed, along with all surrounding

- 7 -

circumstances, in determining whether he voluntarily and intelligently waived his constitutional rights, and whether his confession was voluntary." Washington v. Commonwealth, 228 Va. 535, 547-48, 323 S.E.2d 577, 586 (1984). However, Dr. DeForest's report, the interviewing officers' testimony concerning Stevens' alertness and responses, and Stevens' own responses and coherent testimony at the hearing tend to establish voluntariness.

The deputy sheriff, who had spoken with Stevens on numerous occasions in the past, testified that Stevens was oriented and coherent at the hospital. The detective confirmed that Stevens was alert and responsive when he began his questioning. Stevens himself acknowledged that he understood the Miranda rights. Dr. DeForest's report confirms that. Based on this evidence, including the trial judge's observation of Stevens' "attitude, appearance, [and] demeanor," the trial judge found that although Stevens is "somewhat retarded," he understood the Miranda warnings and their consequences. In view of the judge's factual findings and opportunity to assess Stevens' demeanor and responsiveness at trial, we hold that the evidence proved that the statements were voluntary.

### III.

Stevens also contends that the evidence failed to adequately corroborate his confession concerning the charge of taking indecent liberties with a minor. We disagree.

The principle is well established that an accused cannot be

convicted solely on his or her uncorroborated extrajudicial confession. See Phillips v. Commonwealth, 202 Va. 207, 210-11, 116 S.E.2d 282, 284-85 (1960). To sustain a conviction based on an extrajudicial confession, the evidence must corroborate the corpus delicti. Id. Establishing the corpus delicti "involves the proof of two distinct propositions: first, that the act was done; and secondly, that it was done by the person charged." Nicholas v. Commonwealth, 91 Va. 741, 750, 21 S.E. 364, 367 (1895). See also Claxton v. City of Lynchburg, 15 Va. App. 152, 154, 421 S.E.2d 891, 893 (1992) (noting that "[t]he term corpus delicti, meaning 'the body of a crime,' refers to 'the objective proof or substantial fact that a crime has been committed' . . . [and] 'ordinarily includes two elements: the act and the criminal agency of the act'").

The principle is equally well established that "[w]hen . . . the commission of the crime has been fully confessed by the accused, only slight corroborative evidence is necessary to establish the corpus delicti." Clozza v. Commonwealth, 228 Va. 124, 133, 321 S.E.2d 273, 279 (1984).

> It is not necessary, however, that there be independent corroboration of all the contents of the confession, or even of all the elements of the crime. The requirement of corroboration is limited to the facts constituting the corpus delicti. . . .
>
> The confession is itself competent evidence tending to prove the corpus delicti, and all that is required of the Commonwealth in such a case is to present evidence of such circumstances as will, when taken in connection with the confession, establish the

> corpus delicti beyond a reasonable doubt.
> Further, corroborative facts supporting the
> corpus delicti may be furnished by
> circumstantial evidence as readily as by
> direct evidence.

Watkins v. Commonwealth, 238 Va. 341, 348-49, 385 S.E.2d 50, 54 (1989).

In addition to Stevens' confession, Stevens testified at trial. His own testimony proved he was talking with a "sex operator" on the telephone on December 31, 1996, and masturbating. Other evidence proved that while Stevens lived with the Berry family, he had his own room and his own telephone line connected to his room. Stevens was in his bedroom between 11:00 p.m. and 12:00 a.m., a time when the two minors were separate from the other adults in the house. A pediatric nurse practitioner, who specializes in the assessment of child sexual abuse cases, testified that the child's penis was bruised. She further testified that the bruise could have been caused by the application of pressure by a hand and that the age of the bruise was consistent with an occurrence on December 31, 1996.

Under Code § 18.2-370, to prove a charge of indecent liberties, the Commonwealth had to prove that "[a]ny person eighteen years of age or over, . . . with lascivious intent, . . . knowingly and intentionally: (1) Expose[d] his or her sexual or genital parts to any child under the age of fourteen years to whom such person is not legally married or propose[d] that any such child expose his or her sexual or genital parts to

such person."  The evidence at trial corroborated the date and time of the offense, the presence of the children in the house apart from their parents, and the location of the touching to which Stevens confessed.  Stevens' own testimony corroborated his presence in his room on the night of the offense as well as his previously confessed conduct that he was masturbating while talking on the telephone in the presence of the children.  The evidence, which was extraneous to Stevens' confession, sufficiently corroborated Stevens' confession that he committed the charged offense.

Accordingly, we affirm the convictions.

Affirmed.
