COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Elder and Bray
Argued at Richmond, Virginia


NATHANIEL LAMONT CARTWRIGHT

MEMORANDUM OPINION* BY
v.    Record No. 1349-00-2        JUDGE LARRY G. ELDER
                                    MAY 15, 2001
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                James B. Wilkinson, Judge

        Gregory W. Franklin, Assistant Public
        Defender (Office of the Public Defender, on
        brief), for appellant.

        Susan M. Harris, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


    Nathaniel L. Cartwright (appellant) appeals from his bench

trial conviction for possession of cocaine pursuant to Code

§ 18.2-250.  On appeal, he contends the trial court erroneously

denied his motion to suppress because the evidence established

his purported consent to search was invalid in the face of his

illegal seizure.  We hold that, although appellant was on foot

inside a convenience store at the time of the encounter, the

officer's direction to appellant and others to "put their hands

up," coupled with the officer's subsequent retention of

appellant's driver's license without reasonable suspicion or

_____
        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

probable cause, vitiated appellant's consent to a search of his person because a reasonable person in appellant's position would have believed he was not free to leave at the time he purportedly gave his consent for the search. For these reasons, we reverse appellant's conviction and remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

## I.

## BACKGROUND

On December 30, 1999, three uniformed officers, LaMonte Tucker, Robin Geck and a third person, responded to a call for service which originated from the pay telephone in the parking lot of a convenience store. After completing the call, Officer Tucker decided to enter the store. Tucker frequented the store and knew the clerks. Upon entering, Tucker "said put your hands up" in a "friendly joking manner." Officer Tucker had his hands in his pockets at the time, and none of the officers displayed a weapon. When Tucker "said put your hands up," appellant, a store customer, put his hands up above his shoulders, as did one or two other customers.

Minutes later, Officer Tucker approached appellant and his companion and "engaged [them] in a casual conversation" about where they lived and what they were doing at the convenience store. Officer Geck and the third officer were standing about

-

three feet behind Tucker at that time and did not participate in the conversation.

Officer Tucker then asked appellant and his companion whether "they had anything on their person that they wanted to tell [him] about," and they responded that they did not. Tucker asked appellant's companion if he minded if Tucker searched him, to which appellant's companion responded that he did not mind. After searching appellant's companion, Tucker asked appellant the same question, and appellant, too, said, "yeah, I could search him." As Tucker walked toward appellant to search him, "[appellant] started searching himself and went to his right pocket" and "started pulling out items." When he "pulled out a large off-white rock-like substance, . . . [he] tried to put it back in his pocket" in order "to conceal it." Tucker said, "come on, let me see it, let me see it, and [appellant] pulled it back out." Tucker then took the item away from appellant and placed him in handcuffs. Tucker gave confusing testimony about whether he obtained appellant's identification during the encounter and, if so, when.

Appellant moved to suppress, contending his consent to the search was not voluntary because he was subject to an illegal seizure at the time he purportedly consented. In denying the motion, the trial court found that when Officer Tucker said, "Put your hands up . . . [,] it was evident from his tone of

-

voice that he did not expect anyone to comply" but that

appellant "did put his hands above his shoulders."

> As far as [Officer Tucker] coming in and
> saying put your hands up, that's all over
> with.  I mean, everybody had their hands
> down.  It's uncontradicted evidence he went
> over and talked to these two men rather
> friendly and nothing was said.  It's just
> something about can I search you?
> [Appellant] could have said no.

It also found that during Tucker's subsequent conversation with

appellant, appellant produced his driver's license, and "[a]t

this point, Officer Tucker requested permission to perform a

patdown search of [appellant] for any weapons in order to insure

his safety."  Appellant consented to the search and then

produced a "white rock like substance" that he admitted was

crack cocaine.  The court said Officer Tucker did not have the

reasonable, articulable suspicion necessary to justify a

detention or pat-down search but concluded that appellant

consented to a search.

                              II.

                           ANALYSIS

    "A seizure occurs when an individual is either physically

restrained or has submitted to a show of authority."  McGee v.

Commonwealth, 25 Va. App. 193, 199, 487 S.E.2d 259, 262 (1997)

(en banc).  "Whether a seizure has occurred . . . depends upon

whether, under the totality of the circumstances, a reasonable

person would have believed that he or she was not free to

-

leave." Id. at 199-200, 487 S.E.2d at 262. Other factors relevant under the "totality of the circumstances" analysis include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980).

Whether a particular "consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S. Ct. 2041, 2047-48, 36 L. Ed. 2d 854 (1973)). On appeal, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261. However, we review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case.

-

Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1659, 134 L. Ed. 2d 911 (1996).

Although the trial court, in its opinion, and the parties, on brief, focused primarily on Officer Tucker's statement to the occupants of the convenience store to "put [their] hands up," we find the officer's retention of appellant's driver's license to be another important factor in the totality-of-the-circumstances analysis.[1]  A request for identification made during an otherwise consensual encounter does not, standing alone, convert the encounter into a seizure.  See, e.g., INS v. Delgado, 466 U.S. 210, 216, 104 S. Ct. 1758, 1762, 80 L. Ed. 2d 247 (1984). However, in the case of the driver of a stationary automobile, we have held "that 'what began as a consensual encounter quickly became an investigative detention once the [officer] received [the individual's] driver's license and did not return it to him.'"  Richmond v. Commonwealth, 22 Va. App. 257, 261, 468 S.E.2d 708, 710 (1996) (quoting United States v. Lambert, 46 F.3d 1064, 1068 (10th Cir. 1995)).

Richmond turned on our conclusion that "[a] reasonable person in [Richmond's] circumstances would not have believed

---

[1] This approach is not barred by Rule 5A:18.  Appellant argued to the trial court that Officer Tucker's possible retention of appellant's license when he requested permission to search was a factor for consideration in the totality-of-the-circumstances analysis.  The trial court made findings of fact on this issue but did not indicate what impact it had on the court's ruling.

-

that he could terminate the encounter once the officer retained the driver's license and returned to his police vehicle to run a record check."  Id.  Although we observed that Richmond's departure by car without his driver's license would have violated Code § 46.2-104, which prohibits driving without a license, this observation was not a dispositive factor in our analysis.  See id.  Rather, as we subsequently clarified in Piggott v. Commonwealth, 34 Va. App. 45, 537 S.E.2d 618 (2000), a case involving a passenger, by "retain[ing] [the passenger's] identification [for a few minutes] while he ran a warrant check . . . , [the officer] implicitly commanded [the passenger] to stay."  Id. at 49, 537 S.E.2d at 619.  Under the totality of the circumstances as they existed in Piggott, "[a] reasonable person . . . would not have believed that he could terminate the encounter and walk away."  Id. (emphasis added); see also Lambert, 46 F.3d at 1069 n.4; Salt Lake City v. Ray, 998 P.2d 274, 276-78 (Utah Ct. App. 2000) (holding that first officer's possession of pedestrian's i.d. to run warrant check when second officer sought consent to search constituted seizure which vitiated consent, noting that "critical time at issue [was] . . . when [the pedestrian] consented to the search").[2]

_____

[2] We are aware of the Virginia Supreme Court's recent decision in McCain v. Commonwealth, ___ Va. ___, ___ S.E.2d ___ (Apr. 20, 2001), but we conclude that it is factually distinguishable from appellant's case.  In McCain, the request for identification occurred "without any show of force or display of authority that would have led a reasonable person to

-

Here, the trial court found that appellant consented to the search at a time when Tucker, a uniformed police officer whose two similarly-clad partners stood nearby, retained possession of appellant's identification. That same officer, only moments before, had told all occupants of the convenience store to "put [their] hands up." The trial court found as a fact that appellant had responded to that statement by raising his hands above his shoulders. The store clerks apparently knew Officer Tucker and did not comply because they may have believed he was joking. However, appellant did not know Officer Tucker, and appellant responded in an objectively reasonable fashion by attempting to comply with the command of a uniformed police officer. When Tucker subsequently obtained appellant's driver's license, questioned him about what he had "on [his] person," and asked if he could search appellant, Tucker's actions, viewed in their entirety, escalated the consensual encounter into a seizure and vitiated appellant's consent to be searched. Thus, the trial court erred in concluding that appellant validly consented to the search and voluntarily removed from his pocket

---

believe that he was not free to leave the scene of the encounter." Id. at ___, ___ S.E.2d at ___. Further, the officer conducted a warrant check and returned McCain's driver's license before seeking consent to search McCain's vehicle and person. Id. at ___, ___ S.E.2d at ___. Finally, when the officer said he needed to conduct a pat-down search for weapons, McCain refused and walked away. Id. at ___, ___ S.E.2d at ___. Under those circumstances, including McCain's refusal to submit to the officer's show of authority, the Court held that McCain was not seized. Id. at ___, ___ S.E.2d at ___.

-

the cocaine on which his conviction was based.  Because appellant's removal of the cocaine from his pocket stemmed from the illegal seizure and de facto search, the exclusionary rule required suppression of the cocaine.

For these reasons, we hold that the trial court's denial of appellant's motion to suppress was erroneous.  Therefore, we reverse appellant's conviction and remand for further proceedings consistent with this opinion.

Reversed and remanded.