COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Agee
Argued at Chesapeake, Virginia


DONTA ANTONIO BROWN

                                        MEMORANDUM OPINION[*] BY
v.    Record No. 0178-01-1             JUDGE RICHARD S. BRAY
                                          DECEMBER 4, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                     H. Vincent Conway, Jr., Judge

            Timothy G. Clancy (Moschel, Gallo & Clancy,
            L.L.C., on brief), for appellant.

            Marla Graff Decker, Assistant Attorney
            General (Randolph A. Beales, Attorney
            General, on brief), for appellee.


     Donta Antonio Brown (defendant) was convicted in a bench

trial for possession of a firearm by a felon in violation of Code

§ 18.2-308.2.  On appeal, he contends that the trial court

erroneously denied his motion to suppress evidence obtained by

police incident to an unlawful seizure of his person.  Finding no

error, we affirm the trial court.

     The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.

---

     [*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon the defendant to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (citation omitted).  "Ultimate questions of reasonable suspicion and probable cause to make a warrantless search" involve issues of both law and fact, reviewable de novo on appeal.  Ornelas v. United States, 517 U.S. 690, 699 (1996).  "[I]n performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

## I.

At approximately 7:00 p.m. on the evening of October 12, 1999 three Newport News detectives and a police sergeant were together patrolling in "a detective unit that resembled a taxi cab." Detective Peters testified that, as the foursome approached Moe's convenience store, they observed defendant, with whom they had "dealt with . . . [several times] in the past," accompanied by "a second black male," "standing off to the front" of the store, which is "posted no trespassing" "in the front and the side."  The location was familiar to the police as a "high crime, high drug area," "well known" for "drive-up service, where vehicles pull in

-

and people are served [narcotics] at their windows."  The police observed the two men for "approximately 30 seconds" and "[n]either went in or came out [of the store], and neither were [sic] holding any items that may have been purchased from the store."

As the police watched, a "Jeep Cherokee" "pulled up," and defendant's companion, then "standing next to" him, "lean[ed] in the driver's window" of the vehicle.  Investigating, the officers "pulled the [unit] to the rear of where the jeep was," and defendant "turned to look directly towards [them]," his "eyes . . . big," and "[h]e mouthed something [and] . . . fled on foot. Not running, but walking at a fast pace," "slightly short of a run."

Detective Peters and Sergeant Brown, "wearing [their] raid gear, marked 'Police' on [their] hats as well as [their] vests, displaying [their] badge of authority," exited the vehicle and approached defendant, calling to him "several times, '[p]olice stop, we need to speak with you.'"  Defendant, however, "continued on," proceeding along a "strip mall," followed by police.  When defendant attempted to enter the "last business," a beauty salon, Sergeant Brown "grabbed . . . him," declaring, "You need to stop, we're stopping you for investigation," but defendant "jerked away" and entered the salon.

Peters and Brown followed defendant inside, explaining, "We need you to come out of the business, we need to speak with you. Come outside."  Again, defendant refused to comply, claiming he

-

"needed to give [a woman in the store] her jacket." When the officers protested, "No," and repeated, "You need to come with us, keep the jacket on," defendant advised he "came here to make a phone call." Peters and Brown then "attempted to remove" defendant, and a "struggle[]" ensued. Detectives Torres and Schraudt joined the fray to assist Peters and Brown, and Torres "observed what appeared to be a chrome handle of a weapon, a .25 caliber automatic," in defendant's left jacket pocket. Torres took possession of the weapon, and defendant was arrested for the instant offense.

Prior to trial, defendant moved the court to suppress the firearm, insisting the officers lacked the reasonable suspicion necessary to support a Terry stop. In denying defendant's motion, the trial court concluded the police had "reasonable suspicion based on the totality of circumstances" to effect an investigatory detention. Defendant was subsequently convicted of the subject offense, resulting in this appeal.

II.

"If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures." McGee, 25 Va. App. at 202, 487 S.E.2d at 263. "When a court reviews whether an officer had reasonable suspicion to make an investigatory stop,

-

it must view the totality of the circumstances and view those facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer."  Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989).  "'[A] trained law enforcement officer may [be able to] identify criminal behavior which would appear innocent to an untrained observer.'"  Freeman v. Commonwealth, 20 Va. App. 658, 661, 460 S.E.2d 261, 262 (1995) (citation omitted).

Here, police observed defendant and a companion, at night, standing in a location designated "no trespassing," a "high crime, high drug area," "well known" for "drive-up service, where vehicles pull in and people are served [narcotics] at their windows."  Neither man "went in or came out" of a nearby store nor appeared to possess "items . . . purchased from the store." Police observed defendant's companion "lean[] in the driver's window" of a "Jeep Cherokee" that "had pulled up," behavior they recognized as consistent with a "drive-up" drug transaction. Police then moved the "unit" into defendant's view, and "[h]is eyes got big," "[h]e mouthed something" and "fled on foot . . . at a fast pace," "slightly short of a run."

Guided by the lessons of Illinois v. Wardlow, 528 U.S. 119 (2000),[1] and its progeny, we find such circumstances, when

---

[1] In Wardlow, 528 U.S. 119, police were "converging on an area known for heavy narcotics trafficking in order to investigate drug transactions," when they "observed . . . Wardlow standing next to [a] building holding an opaque bag."  Id. at 121-22.  The

-

considered together, were clearly sufficient to provide reasonable suspicion defendant was engaged, or was about to engage, in criminal activity, justifying a brief investigative detention. See id. Discovery of the offending weapon during the related encounter provided probable cause to arrest defendant.

Accordingly, we affirm the conviction.

Affirmed.

---

officers seized Wardlow after he "looked in the direction of the officers and fled." Id. at 122. The Supreme Court concluded that such circumstances gave rise to reasonable suspicion Wardlow was engaged in criminal activity and justified a related detention. Id. at 124.