COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


NORMAN MAJOR ALLEN

MEMORANDUM OPINION[*] BY
v.    Record No. 2966-00-2    JUDGE JAMES W. BENTON, JR.
MAY 28, 2002
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge

Craig W. Stallard, Assistant Public Defender
(Office of the Public Defender, on brief),
for appellant.

Marla Graff Decker, Assistant Attorney
General (Randolph A. Beales, Attorney
General, on brief), for appellee.


Pursuant to Code § 19.2-254, Norman Major Allen conditionally pled guilty to possession of cocaine in violation of Code § 18.2-250. On appeal, Allen contends that police officers unlawfully seized him and that the trial judge erred in denying his motion to suppress cocaine obtained in a search that followed the seizure. For the following reasons, we agree and reverse the conviction.

I.

In reviewing the legality of a seizure, "we are bound by the trial [judge's] findings of historical fact unless 'plainly wrong'

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). On appeal, the appellant has "'[t]he burden . . . to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" Id. at 197, 487 S.E.2d at 261 (citation omitted).

Viewed in this light, the evidence proved that during the evening hours of August 16, 2000, police officers were "surveilling" two blocks of a city street when one of the officers observed Allen's pickup truck enter the street. A police officer testified that the truck stopped and a passenger exited the truck. The passenger walked sixty-five feet to a person, who was standing, and made a "hand-to-hand transaction in which the passenger . . . gave money to the person . . . for a small item." The officer testified that, although he did not know the color of the item or the denomination of the money, his experience and training as a police officer caused him to believe he had observed a drug transaction.

While this was occurring, the truck made a u-turn and stopped again. As the passenger returned to the truck, the officer "radioed the other two officers, gave them a description of the truck and of the passenger," and told them to "take down the passenger." Uniformed officers, who had not seen any part of the transaction, approached the truck before it departed. Officer Joyner and other officers approached the passenger side of the

-

truck. When Officer Joyner got to the passenger side, the passenger did something to cause him to believe the passenger put something in his mouth. Officer Joyner said, "its in his mouth," asked the passenger to exit the truck, and searched the passenger. He was unable to recover what he believed went into the passenger's mouth.

Officer Gilliam approached Allen, who was in the driver's seat, asked Allen what he was doing in the area, and told him to remain in the truck. He also asked for Allen's driver's license. After more questioning, he directed Allen to exit the truck and stand to the side away "from the other part of the action." Officer Gilliam testified that when "nothing was recovered from the passenger," he asked for Allen's consent to search his truck. When Allen hesitated, he informed Allen that the area was "a high crime, high drug area." Officer Gilliam testified that Allen "finally said go ahead." Officer Gilliam then directed the other officers to search the truck, and he stood with Allen while the other officers searched.

At some point after he obtained Allen's driver's license, Officer Gilliam took it to his police vehicle to run a warrant check. While he was doing so, Officer Joyner had ceased his other activities and "stood close by" Allen. When Officer Gilliam learned that warrants were on file for Allen, he directed Officer Joyner to arrest Allen. Officer Joyner then searched Allen incident to the arrest on the outstanding warrant.

-

At the conclusion of the suppression hearing, Allen's attorney argued that the police had no reasonable articulable suspicion to detain Allen and to demand his driver's license.  He argued that "once [the officers] dispelled the criminal suspicion with regard to the passenger, . . . the seizure should [have] end[ed]."  In response, the Commonwealth argued that "there certainly could have been a reasonable articulable suspicion . . . [Allen] was in some way a conspirator to that transaction they saw occur out there" and that "[i]f he's being held during that time, he's being held pursuant to reasonable suspicion that he was a co-conspirator to the transaction they saw occur a few minutes earlier."  The trial judge ruled that based on the passenger's conduct, "the police had a reasonable suspicion to stop the vehicle," and she denied the motion to suppress.

II.

Allen contends the trial judge erred in denying the motion to suppress because the officer lacked reasonable suspicion or probable cause to detain him.  Allen concedes the detention of the passenger was supported by reasonable articulable suspicion.  He contends, however, that when the officer obtained his driver's license, the officer unlawfully seized him because the officer had no reasonable suspicion he had engaged in criminal conduct.  The Commonwealth contends the officer had a reasonable suspicion of drug activity to investigate the passenger and the only way to

-

confirm or dispel that suspicion was to detain both occupants of the truck for questioning.

In every encounter, "Terry [v. Ohio, 392 U.S. 1 (1968),] requires reasonable, individualized suspicion," to support a detention.  Maryland v. Buie, 494 U.S. 325, 334 n.2 (1990).  Thus, an officer may not detain a person upon an "inchoate and unparticularized suspicion or 'hunch.'"  Moss v. Commonwealth, 7 Va. App. 305, 308, 373 S.E.2d 170, 172 (1988).  According to well established principles, "a person has been 'seized' within the meaning of the Fourth Amendment . . . if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  United States v. Mendenhall, 446 U.S. 544, 554 (1980).  The trial judge ruled that because the officers "had a reasonable suspicion to stop the vehicle," they had a right to obtain Allen's driver's license.

Unlike Maryland v. Wilson, 519 U.S. 408, 410 (1997), and Pennsylvania v. Mimms, 434 U.S. 106, 107 (1977), where the police stopped vehicles because of traffic violations, the police officer here stopped the truck, not because of conduct of the driver, but, rather, to detain the passenger.  Even if we assume, under these circumstances, that police officers may interfere with the driver's liberty by ordering him to remain in the truck or to exit the truck pending completion of their investigation of the passenger, the police officer here did more.  The officers

-

requested and kept Allen's driver's license and seized him for a check of his status.

If a police officer lacks reasonable suspicion to detain the driver of a vehicle, the "'encounter quickly [becomes] an investigative detention once the [officer] received [the person's] driver's license and did not return it to him.'" Richmond v. Commonwealth, 22 Va. App. 257, 261, 468 S.E.2d 708, 710 (1996) (citation omitted). Although the officers were not investigating a traffic violation, the officer specifically requested Allen's driver's license. The officer testified that when he examined the driver's license, it had Allen's name and address and "looked to be valid." The officer testified, however, that he "like[s] to double check" and took the driver's license to his car to check the information and "run a check for warrants." While he did so, another officer stood next to Allen.

The Commonwealth contends the officers had a reasonable articulable suspicion to believe that Allen was a co-conspirator to the drug transaction and that the detention was therefore reasonable under the Fourth Amendment. We disagree. The officers suspected only that the passenger in Allen's truck was buying drugs. The evidence here proved Allen had not been in close proximity to the transaction. We hold that Allen's association with the passenger, under these facts, did not give the officer a reasonable basis upon which to believe Allen was involved in criminal activity.

-

The Commonwealth additionally contends the officers had a reasonable articulable suspicion to detain Allen while they investigated the passenger.  The Commonwealth argues that the evidence, viewed in the light most favorable to it, proves the officer requested Allen's identification during a valid investigatory detention of the passenger.  In Wilson and Mimms, the Supreme Court held that where a vehicle already has been lawfully stopped, the police may require the occupants of the vehicle to exit or remain in the vehicle for the lawful investigatory detention of another occupant.  The Court deemed this restraint on the occupants' liberty to be a minimal additional intrusion that flowed from the stop of the vehicle. Wilson, 519 U.S. at 412; Mimms, 434 U.S. at 111.  Neither of those cases holds, however, that requesting a driver, who is not the focus of the stop, to produce a driver's license is not a separate detention.

When the officer asked for Allen's driver's license, Allen was required by Code § 46.2-104 to produce it.  Although Officer Gilliam testified on direct examination that he requested Allen's driver's license after he asked Allen why he was in the area and on cross-examination that he could not recall when he asked for Allen's driver's license, the evidence clearly establishes that the officer had Allen's license when he directed Allen to stand beside the truck.  Allen remained there while the officer took his license to learn whether the driver's license was valid and

-

whether warrants were outstanding.  Allen was not free to depart.
Moreover, given the events surrounding the taking of his driver's
license, it is clear that a reasonable driver in Allen's
circumstances would not have believed he was free to leave when
the officer obtained and kept his driver's license.  Mendenhall,
446 U.S. at 554; Richmond, 22 Va. App. at 261, 468 S.E.2d at 710.
Even if we assume the lawfulness of the officer's request for and
examination of Allen's license during the investigatory detention
of the passenger, the officer's further detention of Allen by
retaining his license was unlawful because it exceeded the scope
of the investigatory detention of the passenger.

In summary, the evidence proved the officer had no reasonable
suspicion of criminal activity with respect to Allen.  Instead,
the officer took his driver's license to determine his driving
status and to check for outstanding warrants.  That was a seizure
based upon the officer's desire to independently investigate
Allen.  He had no individualized suspicion of criminal conduct
concerning Allen, but, instead, he was acting on a hunch that he
might learn incriminating information.

For these reasons, we reverse the judgment of the trial judge
and dismiss the indictment.

                                    Reversed and dismissed.

-