COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Senior Judge Coleman
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                        MEMORANDUM OPINION[*] BY
v.    Record No. 1213-02-1            JUDGE JAMES W. BENTON, JR.
                                            OCTOBER 29, 2002
JURL VINCENT STERNS


              FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                        Louis R. Lerner, Judge

              Eugene Murphy, Assistant Attorney General
              (Jerry W. Kilgore, Attorney General, on
              brief), for appellant.

              Timothy G. Clancy (Moschel, Gallo & Clancy,
              L.L.C., on brief), for appellee.


    A grand jury indicted Jurl Vincent Sterns for possession of

cocaine and possession of a firearm while in possession of

cocaine.  At the conclusion of a pre-trial hearing, the trial

judge granted Sterns's motion to suppress evidence.  Pursuant to

Code § 19.2-398, the Commonwealth appeals and contends the trial

judge erred in ruling that the initial encounter between Sterns

and the officer was not consensual.  For the reasons that follow,

we reverse the suppression order.

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.

On appeal from the order granting the motion to suppress, we view the evidence in the light most favorable to Sterns. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). So viewed, the evidence proved a police dispatcher sent Officers Hake and Ewing to an apartment complex at night to investigate a report from an anonymous complainant that persons were selling and smoking drugs. The uniformed officers arrived at the apartment parking lot in separate police vehicles, exited their vehicles, and began to walk to the rear of the apartments. Four car lengths ahead of his vehicle, Officer Hake saw Sterns exit a car and stand next to the car while eating. Officer Hake testified that he saw no other people in the parking lot, and he described the events as follows:

> He was just standing there. At that point I approached him and I was several feet from him. I said, do you mind if I talk to you for a moment? Mr. Sterns agreed to speak to me. I approached him.
>
> I asked him -- I explained to him the complaint that we had in the area and why we were out there and I asked him if he observed anybody doing drugs or dealing drugs in the parking lot of the apartment complex. He said he did not and at this point I asked him if he had any weapons or narcotics on him. He said that he had his gun on him.
>
> At that point Officer Ewing was approaching also. He was on the other side and he started to walk towards us. He heard our conversation. He asked Mr. Sterns to place his hands on his head. . . .

-

     *     *     *     *     *     *     *

> At that point I conducted a pat down of his outer clothing and located a weapon, a handgun on his left side. I'm not sure if it was in his coat or his pants pocket, but it was in one of those. He was placed in handcuffs at that time.
>
> Officer Ewing asked him if he had a concealed weapons permit and he said that he did not. At that point he was arrested and placed in the police vehicle.

In a search incident to this arrest, the officers seized cocaine from Stern's pocket.

In his motion to suppress, Sterns relied on <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 487 S.E.2d 259 (1997) (en banc), and argued that he was unlawfully detained when the officers approached and questioned him. On that basis, the trial judge granted the motion to suppress.

## II.

In <u>McGee</u>, we held as follows:

> When the police expressly inform an individual that they have received information that the individual is engaging in criminal activity, the police "convey a message that compliance with their requests is required" and "that failure to cooperate would lead only to formal detention."
>
> Thus, when a police officer confronts a person and informs the individual that he or she has been specifically identified as a suspect in a particular crime which the officer is investigating, that fact is significant among the "totality of the circumstances" to determine whether a reasonable person would feel free to leave. When confronted with an accusation from

-

> police, such as, "we know you are selling drugs from this location, let us search you," no reasonable person would feel free to leave.  Whether a seizure occurs must be determined by evaluating the facts of each case to determine whether the manner in which the police identified the individual as a suspect conveys to the person that he or she is a suspect and is not free to leave.

25 Va. App. at 200-01, 487 S.E.2d at 262-63 (citations and footnote omitted).

Although we held that a detention occurred under those circumstances, we specifically noted that the officer's "statement to [McGee] did not merely convey a message that the officers were conducting a general investigation in response to a report of drug dealing."  Id. at 201, 487 S.E.2d at 263. Moreover, in contrast to the factual circumstances in McGee, we have consistently held that "'[l]aw enforcement officers do not violate the Fourth Amendment merely by approaching an individual on the street, identifying themselves and asking the individual questions.'"  Garrison v. Commonwealth, 36 Va. App. 298, 307, 549 S.E.2d 634, 638 (2001) (quoting Buck v. Commonwealth, 20 Va. App. 298, 301-02, 456 S.E.2d 534, 535-36 (1995)).

Accordingly, we hold that the initial encounter between the officers and Sterns was consensual.  We do not address, because the trial judge did not, whether the ensuing "pat down" search

-

was lawful.  For these reasons, we reverse the order suppressing the evidence.

Reversed.