## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

James H. West

Case No. 02-223

BY JUDGE EDWARD L. HOGSHIRE

November 13, 2002

In this criminal action, James West has filed a motion to suppress evidence and incriminating statements made by him. For reasons articulated below, this Court grants Defendant's motion to suppress.

On May 24, 2002, Detectives Brian O'Donnell and Jimmy Bunch went to 642-A Druid Avenue, the home of Donna Cobbs, to investigate complaints of drug dealing at the residence. Bunch waited in the yard while O'Donnell knocked on the door. O'Donnell spoke with Cobbs on the front porch, and, after she did not give him permission to search the residence, he asked to speak with "the person who was in the house [the Defendant]." (Suppression Hearing Transcript at 21, 33-34.) Cobbs told the Defendant that "there are some police outside that want to talk to you, Jimmy," and the Defendant came out of the back bedroom and approached the front door. (SHT at 59.) O'Donnell told the Defendant "let's sit down" and "talk to me out here [on the front porch]," and the Defendant complied. (SHT at 22-23, 35-36.) While talking on the porch, O'Donnell told the Defendant in a conversational tone that they were narcotics detectives responding to "some complaints of narcotics activity stemming from the house." (SHT at 23-24.) He told him that they were there "to determine if it's just someone who smokes once in a while, or if it's, you know, you're selling pounds or whatever, I — out of the house." (SHT at 24.) In response, the Defendant told O'Donnell that he smoked marijuana on a daily basis and that there may be stems and seeds within the

residence. (SHT at 24-26.) Meanwhile, two uniformed officers had arrived on the scene. O'Donnell told one of the officers to check for outstanding warrants for the Defendant and then obtained permission from Cobbs to enter the residence and conduct a search. (SHT at 24-29, 73-76.) O'Donnell later arrested the Defendant on the basis of outstanding warrants, advised him of his *Miranda* rights, and took a statement from him. (SHT at 28-29, 37-38, 45-48.)

Police-citizen encounters fall into three categories: consensual encounters, "Terry" stops, and arrests. *Iglesias v. Commonwealth*, 7 Va. App. 93, 99 (1988). A "Terry" stop requires the police to have reasonable, articulable suspicion that criminal activity is afoot. *Id.* O'Donnell's reasonable suspicion was based on the Defendant's admission that the residence contained stems and seeds. The issue before the Court is whether the Defendant made this statement as a result of an unlawful detention. Whether a seizure has occurred depends upon the totality of the circumstances and whether a reasonable person would have believed he was free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The Commonwealth asserts that the circumstances of this case are akin to *Sheler v. Commonwealth*, 38 Va. App. 465 (2002), where the Court of Appeals of Virginia ruled that a suspect was not illegally seized and transported for questioning. In *Sheler*, several officers entered the defendant's house with permission and did not accuse him of a crime, but rather escorted him unhandcuffed to a police station to question him about the involvement of his vehicle in a robbery. The Defendant relies on *McGee v. Commonwealth*, 25 Va. App. 193 (1997), where the Court of Appeals of Virginia stated that no reasonable person would feel free to leave when confronted with accusations from police. In *McGee*, a uniformed officer approached the defendant on a porch in front of a store and told him that he was accused of selling drugs and then asked to pat him down.

The Court finds the Defendant could not have reasonably understood that he was free to leave prior to making incriminating statements. Unlike the defendant in *McGee*, who was already outside when confronted by police, the Defendant was summoned from inside a residence to be questioned on the front porch. The fact that the O'Donnell summoned him, rather than only questioning Cobbs, contradicts the implication that this was a general investigation of the residence. Above all, O'Donnell's statement to the Defendant that he was there to determine "whether *you're* selling pounds" (emphasis added) conveyed the impression that the Defendant was specifically the subject of the investigation. No reasonable person, when confronted with four police officers under these circumstances, would have felt free to leave. Accordingly, it was an unlawful detention that gave rise to the Defendant's statements and the evidence obtained in the subsequent search, and they are

hereby suppressed as "fruits of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).

The Court grants Defendant's motion to suppress.

January 22, 2003

This is to follow up on the Court's previous letter opinion dated November 13, 2002, which outlined the basis for the ruling on the Defendant's motion to suppress evidence obtained as a result of his detention on May 24, 2002. That letter did not specifically address the scope of the ruling and left unresolved whether the items obtained from the subsequent search of the premises, as opposed to the items found on the Defendant's person and statements adduced from the detention, would be deemed as "fruit of the poisonous tree." After reviewing the hearing transcript and the memoranda of counsel, the Court finds that the consent to search provided by Ms. Cobbs was without coercion and was not tainted by the unconstitutional detention of the defendant; thus, the items seized from inside the premises should not be suppressed.