COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and Senior Judge Coleman
Argued by teleconference

COMMONWEALTH OF VIRGINIA

v.     Record No. 2069-08-2

LORENZO BUTLER

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
JANUARY 15, 2009

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Josephine F. Whalen, Assistant Attorney General II (Robert F.
McDonnell, Attorney General, on brief), for appellant.

(Cassandra M. Hausrath, Assistant Public Defender; Office of the
Public Defender, on brief), for appellee.

Pursuant to Code § 19.2-398, the Commonwealth appeals the trial court's suppression of

evidence in the prosecution of Lorenzo Butler ("Butler").  The Commonwealth argues that the

trial court erred in holding that Officer Charles Baldwin ("Officer Baldwin") lacked probable

cause to arrest Butler after seeing him running from a salvage yard late at night.  For the

following reasons, we agree with the Commonwealth, reverse the trial court's ruling, and remand

for proceedings consistent with this opinion.

I.  BACKGROUND

"On appeal of a ruling on a motion to suppress, we view the evidence in the light most

favorable to the party prevailing below, granting to it all reasonable inferences fairly deducible

therefrom."  Edwards v. Commonwealth, 38 Va. App. 823, 827, 568 S.E.2d 454, 456 (2002).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Officer Baldwin's testimony was the only evidence presented at the suppression hearing. His testimony established the following.

On February 9, 2008, at 11:00 p.m., Officer Baldwin was on patrol in the City of Richmond when he observed a car parked in a parking lot beside a salvage yard. This made him suspicious because he had never seen a car parked at the salvage yard at that time of night. Officer Baldwin circled around the block and drove up behind the car. As he circled around, he did not see anyone near the gate to the salvage yard. Officer Baldwin was driving a marked police car, but he did not activate the car's siren or flashing lights.

As he approached the parked car, Officer Baldwin saw Butler running from "the front of the salvage yard where the gate would be" towards the car. While Butler was running, another man stood up from behind the parked car. Officer Baldwin testified that the men appeared to be "caught off guard" and both men had a "panicked look" on their faces. Officer Baldwin drew his weapon and ordered the men to stop. He held them at gunpoint until additional officers arrived.

When the other officers arrived, Officer Baldwin confirmed the identity of the two men and discovered that the man who had stood up from behind the car had a warrant out for his arrest. Officer Baldwin then left the individuals in the custody of the other officers and went to investigate the salvage yard.

When he came to the gate next to the parking lot, Officer Baldwin saw that the lock securing the gate had been cut and that the gate was partially open. Officer Baldwin and other officers entered the salvage yard where they discovered a duffle bag underneath a truck. The officers found a hacksaw inside the otherwise empty duffle bag. While Officer Baldwin was in the salvage yard, another officer asked Butler for permission to search his car. Butler consented, and the officers discovered a used air conditioning condenser, a used catalytic converter, and

"various hand tools" in the trunk of the car. Officer Baldwin later testified that, based on his training and experience, he knew that those items are "commonly recycled for cash."

In light of all of those discoveries, Officer Baldwin arrested Butler and transported him to the police station. At the station, an officer discovered heroin in Butler's possession. The Commonwealth subsequently charged Butler with possession of heroin with the intent to distribute, in violation of Code § 18.2-248.

Prior to trial, Butler moved to suppress the heroin. Butler claimed that, at the time Officer Baldwin drew his gun and ordered Butler to stop, he did not have reasonable suspicion that Baldwin was engaged in criminal activity. In the alternative, Butler argued that Officer Baldwin did not have probable cause to arrest him at the time he was taken to the police station. The trial court held that Officer Baldwin had reasonable suspicion to make the initial stop, but held that Officer Baldwin did not have probable cause to arrest Butler and transport him to the police station. The court suppressed the heroin as the fruit of an unlawful arrest. The Commonwealth appeals that decision.

## II. ANALYSIS

On appeal, the Commonwealth argues that the trial court erred in suppressing the heroin discovered on Butler at the police station. It argues that the suspicious circumstances that Officer Baldwin observed at the salvage yard were sufficient to give him probable cause to believe that Butler had committed a crime.

Whether an arrest is proper under the Fourth Amendment is "a mixed question of law and fact." Ornelas v. United States, 517 U.S. 690, 696 (1996). Accordingly, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261

(1997) (*en banc*). However, we review the trial court's application of the Fourth Amendment to those facts *de novo*. See Ornelas, 517 U.S. at 691.

"Articulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible. They are commonsense, nontechnical conceptions that deal with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Id. at 696 (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Generally, however, "[p]robable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, . . . warrant a person of reasonable caution to believe that an offense has been or is being committed." Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981), cert. denied, 456 U.S. 906 (1982). Probable cause "does not demand any showing that such a belief be correct or more likely true than false." Texas v. Brown, 460 U.S. 730, 742 (1983). In making probable cause determinations, courts must "test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976). On the night in question, Officer Baldwin observed several circumstances that he found suspicious.

First, Officer Baldwin observed a car parked in the parking lot next to the salvage yard at 11:00 p.m., an hour at which the business was closed. Officer Baldwin "regularly" patrols that area and has never seen a car parked near the salvage yard at night before. This fact alone made Officer Baldwin suspicious enough that he felt the need to investigate further.

Next, Officer Baldwin observed Butler fleeing from what he later discovered to be the scene of an apparent crime and discovered that Butler's companion had been crouched behind a parked car. Officer Baldwin had just driven past the area from which Butler was running and had not seen anyone in that area. From those facts, Officer Baldwin could reasonably conclude

- 4 -

that Butler and his friend hid when they saw Officer Baldwin's patrol car pass by, and attempted to flee when they recognized that Baldwin intended to investigate.

Officer Baldwin also discovered that the lock on the salvage yard gate was broken. The lock was broken at a "clean cut" and did not appear to be rusted or worn. Officer Baldwin had driven past the gate before stopping in the parking lot and had not noticed anyone standing in that area. A few moments later, Officer Baldwin saw Butler running from the side of the salvage yard containing the partially open gate. Officer Baldwin could have reasonably concluded that Butler had cut the lock and was hiding inside the gated area when Officer Baldwin initially drove past and did not see anyone on that side of the salvage yard.

When Officer Baldwin investigated the salvage yard, he discovered a hacksaw inside a duffle bag underneath a truck. While it certainly would not be unusual to find a hacksaw in a salvage yard, finding a hacksaw in an otherwise empty duffle bag, under a truck, is at least somewhat suspicious. That discovery is even more suspicious in light of the cut lock at the entrance of the salvage yard.

Finally, officers discovered used car parts in the trunk of Butler's car during a consensual search of the vehicle. Officer Baldwin knew, from his training and experience, that the specific parts found in the trunk are often "recycled for cash." Although there is no evidence that the parts were stolen, their presence in Butler's car, the cut lock at the salvage yard, the hacksaw found in the salvage yard, the time of day, Butler's initial hiding, and subsequent flight gave Officer Baldwin probable cause to believe that Butler was attempting to burglarize the salvage yard.

"The Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145 (1979). Probable cause is a lesser standard than guilt beyond a reasonable doubt, see Myers v. Commonwealth, 43 Va. App. 113, 119, 596 S.E.2d 536, 538-39

- 5 -

(2004), which requires the prosecution to "exclude every reasonable hypothesis of innocence," Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983). Rather, a finding of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Gates, 462 U.S. at 243 n.14. In light of the totality of the circumstances, Officer Baldwin could have reasonably concluded that there was a "substantial chance" that Butler was engaged in criminal activity. Officer Baldwin, therefore, had probable cause to arrest Butler, and the trial court erred by suppressing the heroin discovered subsequent to the arrest.

## III. CONCLUSION

For the foregoing reasons, we hold that the trial court erred by suppressing the heroin discovered following Butler's arrest. We, therefore, reverse the decision of the trial court and remand for further proceedings consistent with this opinion.

Reversed and remanded.