COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Senior Judge Willis
Argued at Chesapeake, Virginia


MARK B. ASBLE
                                                        OPINION BY
v.        Record No. 1272-06-1            JUDGE JERE M.H. WILLIS, JR.
                                                   NOVEMBER 27, 2007
COMMONWEALTH OF VIRGINA


            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                            James A. Cales, Jr., Judge

        Darell Sayer (Ferrell, Sayer & Nicolo, P.C., on brief), for appellant.

        Alice T. Armstrong, Assistant Attorney General (Robert F.
        McDonnell, Attorney General; Joshua M. Didlake, Assistant
        Attorney General, on brief), for appellee.


        On appeal from his convictions of possession of heroin and possession of cocaine, Mark B.

Asble contends the trial court erred in denying his motion to suppress a spoon and a syringe found

upon a search of his car.  He argues that the police officer lacked a reasonable articulable suspicion

of criminal activity justifying the search.  We agree and reverse the judgment of the trial court.

        "In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the

defendant] to show that the ruling, when the evidence is considered most favorably to the

Commonwealth, constituted reversible error.'"  McGee v. Commonwealth, 25 Va. App. 193, 197,

487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265

S.E.2d 729, 731 (1980)).  While we review *de novo* the ultimate questions of reasonable suspicion

and probable cause, we "review findings of historical fact only for clear error[1] and . . . give due

---

        [1] "In Virginia, questions of fact are binding on appeal unless 'plainly wrong.'"  McGee,
25 Va. App. at 198 n.1, 487 S.E.2d at 261 n.1 (quoting Quantum Dev. Co. v. Luckett, 242 Va.
159, 161, 409 S.E.2d 121, 122 (1991)).

weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996) (footnote added).

On July 5, 2005, at approximately 11:30 p.m., Officer B.C. Davis saw a Ford Escort stopped on the shoulder of an entrance ramp of Interstate Route 264 with its engine running. He testified that he did not recall whether the headlights were lit. He could see two people in the car. He parked on an angle behind the car and "turned on [his] back hazard lights" to check on the occupants, "to make sure they were all right."

Approaching the car, Davis saw the driver, later identified as Asble, bend toward the floorboard, making a motion with his arm. Because the area was dark and the headlights of his vehicle were at an angle, Davis could not see inside the car. He testified that, based upon his training and experience, he knew that a bending motion such as the one he saw "means that sometimes there are weapons involved in that and/or narcotics when people are reaching out of the area of the police." Asble, a convicted felon, testified that he merely leaned to engage his emergency brake, because his car was rolling backwards. Davis testified that he did not recall that the car was rolling, but acknowledged that he had previously testified that it was, and that if he so testified, that was probably the case. The trial court accepted Davis's physical demonstration of Asble's movement and rejected Asble's. It found that Asble's movement gave him access to the floorboard of his car.

Davis illuminated the interior of the car with a flashlight. Mrs. Asble was sitting cross-ways on the rear seat. Davis "asked were they okay" and "asked [Asble] what he was doing." Asble replied that his wife was sick. Davis made no further inquiry as to her sickness and made no offer of help. He asked Asble to get out of the car. Asble complied. Davis testified that at that point, Asble was not free to leave. Davis frisked Asble. He found no weapon. Based upon Asble's arm

movement, Davis thought there might be a weapon in the car and decided to "sweep" the car.  He asked Mrs. Asble to get out of the car.  She complied.

Shining his flashlight in the car, Davis saw between the front seat and the rear floorboard a silver item that looked like it might be the handle of a knife.  He seized this item, which proved to be a spoon containing suspected heroin.  Looking in the front seat where Asble had made the arm movement, Davis saw and seized a syringe containing suspected heroin.[2]

Reviewing the evidence, the trial court described Davis's demonstration of Asble's arm movement, stating "the officer leaned fully over as if he were going all the way down to the floorboard with the movement."[3]  Denying the motion to suppress, the trial court held that based upon the lateness of the hour, Asble's arm movement, and his non-responsive answers, Davis had sufficient cause to conduct a protective sweep of the car.

"The Fourth Amendment protects people from unreasonable searches and seizures by law enforcement officers." Thomas v. Commonwealth, 24 Va. App. 49, 54, 480 S.E.2d 135, 137 (1997) (*en banc*).  "If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures." McGee, 25 Va. App. at 202, 487 S.E.2d at 263 (citing Terry v. Ohio, 392 U.S. 1, 27 (1968)).  The suspicion must be more than a hunch.  It must flow reasonably from articulable facts.  Reasonable suspicion is "'a particularized and objective basis' for suspecting the person stopped of criminal activity." Ornelas, 517 U.S. at 696 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).

> "Circumstances we have recognized as relevant . . . include
> characteristics of the area surrounding the stop, the time of the

---

[2] An analysis showed that the syringe contained heroin and cocaine.

[3] Appellant did not object to the trial judge's description of the movement.

- 3 -

> stop, the specific conduct of the suspect individual, the character of the offense under suspicion, and the unique perspective of a police officer trained and experienced in the detection of crime."

Walker v. Commonwealth, 42 Va. App. 782, 791, 595 S.E.2d 30, 34 (2004) (quoting Christian v. Commonwealth, 33 Va. App. 704, 714, 536 S.E.2d 477, 482 (2000) (*en banc*)). Furthermore, "frisking for weapons based upon the exigency of protecting an officer's safety is not limited to a pat-down of the suspect but may extend to nearby vehicles . . . or rooms or premises to which the suspect may retreat to secure a weapon . . . ." Washington v. Commonwealth, 29 Va. App. 5, 14, 509 S.E.2d 512, 516 (1999) (*en banc*) (citing Servis v. Commonwealth, 6 Va. App. 507, 520, 371 S.E.2d 156, 162-63 (1988)). Davis's approach to Asble's car did not implicate the Fourth Amendment.

> [A] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.

Florida v. Bostick, 501 U.S. 429, 434 (1991) (citation omitted).

Asble's reply that his wife was sick was an appropriate response to Davis's questions. Being thus informed, Davis made no further inquiry as to the nature of her illness and made no offer of assistance. Rather, he removed Asble from the car and began a criminal investigation. At that point, the consensual nature of the encounter ended.

Thus, our inquiry must be whether Davis had before him, at that time, sufficient articulable facts to support a reasonable and particularized suspicion that Asble was engaged in criminal activity and was armed and dangerous. We conclude that he did not. In the absence of such a scenario, he lacked authority to remove Asble from his car and to search the car.

The incident occurred at night. Asble's car was parked on the shoulder of the road. The record discloses no illegality in this position nor how long the car had been there. When asked,

Asble stated that he was there because his wife was sick. The record discloses no reason for Davis to doubt the truth of that statement. The location was not a high crime area or an area known for illegal conduct. Thus, our inquiry focuses on the only fact articulated by Davis in support of his suspicion, Asble's movement.

Davis assumed that Asble's movement was a furtive gesture responsive to the approach of a policeman. However, the record does not disclose that Asble knew he was being so approached. The police car did not have its emergency lights on. No evidence disclosed that Davis was in uniform. No evidence disclosed that Asble knew Davis was a policeman or even that he was aware of his approach. The evidence disclosed only a motion that was not inherently culpable and that coincided with bringing to a stop a car that according to Davis's acknowledged prior testimony was rolling backwards.

Davis identified no criminal activity of which he suspected Asble. He noted only that "sometimes" when movement such as he saw occurs, weapons and/or narcotics are present. This was, at best, a mere hunch, not a particularized suspicion flowing reasonably from articulable facts. Thus Davis lacked justification to remove Asble from the car and to search the car.

Because the trial court erred in denying the motion to suppress, we reverse the judgment of the trial court and remand the case for further proceedings, if the Commonwealth be so advised.

Reversed and remanded.