COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Petty, Chafin and Decker
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                            MEMORANDUM OPINION[*] BY
v.        Record No. 2287-14-1        JUDGE MARLA GRAFF DECKER
                                            MAY 26, 2015
DUSTIN LEE CORRELL


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Elizabeth C. Kiernan, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellant.

Matthew E. Ballard (Smith Law Firm, P.L.C., on brief), for appellee.


Dustin Lee Correll (the defendant) was indicted for possession of heroin with the intent to

distribute in violation of Code § 18.2-248.  Pursuant to Code §§ 19.2-398 and -400, the

Commonwealth appeals a pretrial ruling granting the defendant's motion to suppress evidence

recovered as a result of the search of his vehicle during a traffic stop.  The Commonwealth contends

that a reasonable concern for officer safety supported the search and, consequently, the trial court

erred in suppressing the evidence.  The record, viewed under the appropriate legal standard for a

Commonwealth's appeal, supports the trial court's conclusion that the facts did not provide an

objective basis for the officer to suspect that the defendant was armed and dangerous.  Therefore,

we affirm the judgment of the trial court.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND[1]

During the hearing on the defendant's motion to suppress, Officer Walter Williams, Jr., of the Hampton Division of Police, testified regarding the events that led to the defendant's arrest.  Williams first observed the defendant in the driver's seat of a truck parked outside a residence.  The officer saw another man in the passenger seat of the truck.  As Williams watched, the man in the passenger seat got out of the vehicle and went into the house.  He returned briefly to the truck, then again got out and went back into the house.  Officer Williams believed an item was either being brought to or taken away from the truck.  Williams followed the defendant when he drove away moments later.

The officer testified that as he followed the truck, he saw the defendant bend down as though he was reaching toward the floorboard or center console as he drove.  The defendant repeatedly looked back at Williams.  According to the officer, the defendant was so distracted that "his back tires ran into the median."

Williams initiated a traffic stop based on a non-functioning brake light on the defendant's vehicle.  The defendant stopped his truck immediately, behavior that Officer Williams described as unusual.  Williams believed that the defendant was hiding "something," possibly a weapon, and radioed for backup.  Before the second police officer arrived, however, Williams approached the truck.  While the defendant was seated in the vehicle, he did not make any movements that caused Williams concern for his safety.  The defendant fully cooperated with the officer.

---

[1] On review of a ruling on a motion to suppress, this Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).  To the extent that the trial court did not make explicit findings of fact, we view the evidence and the inferences deducible from it in the light most favorable to the defendant, who prevailed below.  See Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (*en banc*).

Williams noted that during their encounter, the defendant appeared nervous. According to the officer, he was breathing heavily and his hands shook.

Minutes later, a second officer arrived. Officer Williams asked the defendant to step out of the truck, and he complied with the request. As they spoke, the defendant patted his jacket pocket twice and then put his hand inside the pocket. Williams "told him to keep his hand out of his pocket." When asked why he had been reaching toward the truck's center console while driving, the defendant said that he had been throwing away trash. Williams, however, believed that the defendant was hiding something.

The officer instructed the defendant to "stay back with the back-up officer" while he went over to the truck. The defendant protested in "a high pitched tone." Williams went directly to the center console and looked inside, where he found illegal narcotics. The officer did not frisk the defendant at any time prior to the search of the vehicle.

Officer Williams testified that the stop occurred in January at around 4:00 p.m. He explained that the house where he had initially seen the defendant was a location that Williams had visited twice within the preceding year in the course of narcotics investigations. At the time of the traffic stop, Officer Williams was driving an unmarked car, but he explained that the emergency light and antennas on his vehicle made it "obvious" that it was a police car. Although his police badge, "raid vest," and gun were visible, he was not wearing a standard police uniform.

The prosecutor argued that the circumstances provided an objective basis to form a reasonable suspicion that the defendant was armed and could "gain access to a weapon" in the center console compartment of the vehicle. He cited this Court's decision in McCain v. Commonwealth, No. 0110-06-3, 2007 Va. App. LEXIS 193 (Va. Ct. App. May 8, 2007), as support for his position, arguing that the facts were similar. Defense counsel agreed that the

facts were similar and then pointed out that the Supreme Court of Virginia reversed the Court of Appeals in that case. See McCain v. Commonwealth, 275 Va. 546, 659 S.E.2d 512 (2008).

The trial court took a recess in order to read the Supreme Court opinion in McCain. After the recess, the court concluded the hearing in order to review other relevant law. At a later date, the trial judge contacted counsel to notify them of his decision on the motion to suppress. The court then set a date in order to explain the ruling in open court. The judge explained, for the record, "The Commonwealth argued that the officer had a reasonable belief that the defendant was armed and dangerous and as a result of that searched the vehicle. I found, however, that the instruction[] from the Supreme Court of Virginia in McCain . . . was controlling in this case." The judge went on to summarize the officer's testimony that the defendant's "reaching movements" led him to believe that the defendant was concealing a weapon. The trial court noted, however, that this specific testimony was contradicted by Officer Williams' actions of approaching the defendant's truck without waiting for backup to arrive and not immediately having the defendant get out of the truck "to show his hands." Further, the court discussed the contradiction between the officer's stated concern caused by the defendant's patting his jacket and the officer's decision not to pat down the defendant. The court then ruled that "the subsequent search of the vehicle was not appropriate."

Defense counsel asked the trial court "for clarification" of whether it made a finding as to "what . . . the officer's motivation was in searching the interior of the truck." The court responded to the inquiry, stating,

> I'm not sure that I need to make that finding in light of the fact that I made the finding that his actions were improper without—I don't want to use the word improper. That his actions doing the search were without proper justification.
>
> Based on my reading from the transcript and recollection from the officer's testimony I do believe that the officer had

substantial suspicions that there might be contraband in the vehicle and that may have led to his motivation and his search.

This appeal followed the trial court's ruling granting the motion to suppress.

## II.  ANALYSIS

The Commonwealth argues that the trial court improperly relied on the investigating officer's subjective motivation in granting the defendant's motion to suppress.  The Commonwealth also contends that under the circumstances, it was objectively reasonable for Williams to search the passenger compartment of the truck pursuant to the "stop and frisk" exception to the Fourth Amendment and Michigan v. Long, 463 U.S. 1032, 1049 (1983).

On appeal of a ruling granting a defendant's motion to suppress, the Commonwealth has the burden to show that the trial court's ruling constituted reversible error.  See Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002).  "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed *de novo* on appeal."  McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)).  Although "we give deference to the factual findings of the circuit court, . . . we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment."  McCain, 275 Va. at 552, 659 S.E.2d at 515.

The defendant did not contest the validity of the traffic stop and the accompanying brief detention.  The question before this Court is whether the evidence supports the trial court's ruling that during the course of the traffic stop, Officer Williams violated the defendant's Fourth Amendment rights by searching the center console of his truck.

The Fourth Amendment prohibits *unreasonable* searches and seizures.  Buhrman v. Commonwealth, 275 Va. 501, 505, 659 S.E.2d 325, 327 (2008).  "A search is considered

reasonable when it is either supported by a warrant, or when an exception to the warrant requirement has been met." Id.

One exception to the warrant requirement arises in the context of a protective search during a roadside encounter. Long, 463 U.S. at 1048-49. The Supreme Court explained:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

Id. at 1049 (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)); see also Arizona v. Gant, 556 U.S. 332, 346-47 (2009) (noting that its holding did not affect the Long exception for a vehicle search conducted out of concern for officer safety).[2]

Relevant facts "in this analysis include characteristics of the area surrounding the stop, the time of the stop, the specific conduct of the suspect individual, the character of the offense under suspicion, and the unique perspective of a police officer trained and experienced in the detection of a crime." McCain, 275 Va. at 554, 659 S.E.2d at 517. "Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Illinois v. Wardlow, 528 U.S. 119, 124 (2000). Additionally, an officer is permitted "to view the circumstances confronting him in light of his training and experience, and he may consider any suspicious conduct of the suspected person." James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996) (citing Terry, 392 U.S. at 27). Further, whether the Fourth Amendment has been violated is a question

_____

[2] The Supreme Court concluded that police control of the suspect at the time of the search did not negate a reasonable fear that he was armed and dangerous. Long, 463 U.S. at 1051. The Court reasoned that an individual: (1) may "break away from police control and retrieve a weapon from his automobile," (2) will reenter the vehicle after the detention ends, and (3) may be permitted by the police to reenter the vehicle during the investigative encounter. Id. at 1051-52. The Court, however, stopped short of allowing the police to "conduct automobile searches *whenever* they conduct an investigative stop." Id. at 1049 n.14.

to be determined from all the circumstances and is viewed under an *objective* rather than subjective standard. See Terry, 392 U.S. at 21-22; Thomas v. Commonwealth, 57 Va. App. 267, 274, 701 S.E.2d 87, 90-91 (2010). Finally, "[r]easonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions." Scott v. Commonwealth, 20 Va. App. 725, 727, 460 S.E.2d 610, 612 (1995).

As an initial matter, the Commonwealth contends that the trial court "improperly relied upon the subjective motivation of the officer." However, a trial court is presumed to know the law and to properly apply it to the facts in a case. Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). This presumption can be overcome only by "clear evidence to the contrary." Id. When considering whether a trial court applied an incorrect legal standard, the judge's comments must be viewed in context. Id.

A full reading of the record shows that the court took the case under advisement to review the law before making its ruling. In rendering its decision, the court noted facts critical to the objective standard. After the defense counsel specifically asked about a finding on Williams' subjective motivation, the court explained that a finding on the investigating officer's motive was unnecessary. The court then simply mentioned that based on its recollection of the record, the officer had "substantial suspicions" that there might be contraband in the truck. We conclude that the record, taken as a whole, shows that the trial court based its ruling on the appropriate objective standard and it does not rebut the presumption that the trial court understood and correctly applied the law.

Turning to the merits of the case, the decision in McCain, 275 Va. 546, 659 S.E.2d 512, is instructive. In that case, the Supreme Court considered a protective search of a passenger during a traffic stop. Id. at 549, 659 S.E.2d at 514. The vehicle had parked briefly in front of a house familiar to the officer from a previous drug investigation. Id. at 550, 659 S.E.2d at 514.

McCain and a second occupant of the automobile briefly entered the house and then got back into the car. Id. at 550, 552, 659 S.E.2d at 514, 516. The vehicle left the location, and the officer stopped it for a traffic violation in what he described as a high-crime area. Id. at 550-51, 659 S.E.2d at 514-15. The driver's operator's license was suspended, and the car needed to be towed. Id. at 550, 659 S.E.2d at 515. When McCain, the passenger, got out of the car, the officer frisked him. Id. at 550-51, 659 S.E.2d at 515. McCain immediately became nervous. Id. at 551, 659 S.E.2d at 515. The officer found a gun and cocaine on the defendant's person. Id. The Supreme Court held that these circumstances did not provide an objectively reasonable suspicion that McCain was armed and dangerous. Id. at 554, 659 S.E.2d at 517. The Court explained that "[a]lthough the character of the location and the time [were] relevant factors, they did not provide [the officers] a particularized and objective basis for suspecting McCain was armed and dangerous." Id. Additionally, the Court found that the circumstances did not provide a basis for a reasonable suspicion that McCain was involved with drugs. Id. at 554-55, 659 S.E.2d at 517. The facts in this case are similar to those in McCain.

Here, the defendant appeared to be nervous when the police officer began following his truck. "'[N]ervous, evasive behavior is a pertinent factor' for consideration in assessing the totality of the circumstances.'" Id. (quoting Wardlow, 528 U.S. at 124). While the record establishes that the defendant was nervous, there is nothing in the record that shows that he was evasive. In fact, he stopped his vehicle as soon as the officer activated his emergency lights and was cooperative during the stop.

The Commonwealth emphasizes that the defendant's nervousness occurred in conjunction with his "furtive movements" and additional facts giving rise to the inference that he participated in a drug transaction. The Commonwealth describes the defendant's actions of leaning toward the console and floor and then, after the stop, patting and reaching into his jacket

- 8 -

pocket as "furtive." Williams believed that the defendant was "hiding something," even though the officer did not see any object and the defendant told him that he leaned over in order to throw away trash.

We must consider the circumstances surrounding the defendant's movements inside and outside of the truck. See Asble v. Commonwealth, 50 Va. App. 643, 649, 653 S.E.2d 285, 288 (2007) (considering whether the driver's movement "was a furtive gesture responsive to the approach of a policeman" where the officer was not in uniform and had not activated the emergency lights on his police car). The police car was unmarked, and Williams was not in a standard police uniform. The officer was also seated in his unmarked car, driving behind the defendant. Further, the defendant's allegedly furtive movements while driving took place before Williams activated the unmarked police car's emergency lights. The officer also described the defendant as reaching for his jacket pocket and putting his hand in it. The defendant suggested that this behavior was not "furtive" because it was winter. The defendant's movements were not "inherently culpable," and the record does not establish that his movements were in response to the presence of law enforcement or suggested that a weapon was hidden inside the vehicle. See id.

The Commonwealth argues that the defendant's stop in front of a house associated with drug activity, coupled with the officer's belief that *something* was being transferred between the truck and the house, heightened the danger that the defendant had a gun based on the connection between drugs and firearms. See Bandy v. Commonwealth, 52 Va. App. 510, 518, 664 S.E.2d 519, 523 (2008) (recognizing a link between illegal drugs and guns). However, McCain was also in a vehicle parked in front of a house associated with drug activity, and he, like the occupant of the defendant's truck, entered the house briefly before returning to the automobile. McCain, 275 Va. at 550, 552, 659 S.E.2d at 514, 516. The Supreme Court concluded that McCain's actions

were not enough to provide a reasonable suspicion of criminal activity. Id. at 553, 659 S.E.2d at 516. Officer Williams saw a second person get out of the passenger seat of the defendant's truck, go briefly into a house that had previously been associated with drugs, return briefly to the defendant's vehicle, and then go back into the house. As in McCain, the defendant's behavior here did not give rise to a reasonable suspicion that he had engaged in a drug transaction. Thus, there is nothing to suggest the presence of illegal narcotics and the resulting connection to a weapon.

We also note that the traffic stop in McCain occurred in a high-crime area, and we do not have similar evidence in this record. See Whitaker v. Commonwealth, 279 Va. 268, 276, 687 S.E.2d 733, 737 (2010) (explaining that whether an encounter takes place in a high-crime area is relevant to a Terry analysis). The association of the house with drugs over the previous year was not sufficient evidence to identify the neighborhood as a high-crime area. See McCain, 275 Va. at 552-53, 659 S.E.2d at 516 (implying that the house's association with previous drug activity was a separate factor from the fact that the encounter occurred in a "high drug" area by discussing the two circumstances separately).

The Commonwealth further contends that the facts in the instant case are distinguishable from McCain because in that case the officer who conducted the pat down had a personal practice of searching everyone with whom he interacted in that neighborhood. See id. at 551, 659 S.E.2d at 515. However, the Supreme Court did not consider the officer's personal motivation in conducting the search in determining that the circumstances did not "support a reasonable suspicion that McCain was involved in criminal activity or was armed and dangerous." Id. at 555, 659 S.E.2d at 517.

Finally, consistent with the trial court's findings, we note that Officer Williams' actions were inconsistent with a concern for officer safety. Williams approached the truck before the

- 10 -

backup officer arrived, did not pat down the defendant's person, did not instruct him to keep his hands where the officer could see them, and did not ask him if he had any weapons.

Based on the facts of this case, and in light of the applicable legal standards, we agree with the trial court and conclude that Officer Williams acted unlawfully when he searched the console of the defendant's vehicle. In the instant case, the facts did not provide an objectively reasonable basis for suspecting that the defendant was armed and dangerous, even when giving "due weight to the inferences drawn from [the] facts by . . . local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

Williams stopped the truck due to a non-functioning brake light, a minor traffic infraction. Although the defendant looked at the unmarked police car several times before the stop, and was nervous while interacting with the officer, he was completely cooperative with the officer. Further, the encounter took place in the afternoon, rather than during the late hours of the evening. Despite the fact that the officer believed that the defendant's actions of reaching toward the console indicated that he was hiding something, the officer did not see any object and no facts in the record suggest that the defendant was hiding a weapon. Officer Williams did not observe criminal behavior by the defendant and had not been given any information connecting the defendant to criminal activity. These circumstances did not support a reasonable suspicion that the appellant possessed a weapon in the vehicle. See generally United States v. McCraney, 674 F.3d 614, 621 (6th Cir. 2012) (affirming the conclusion that no reasonable suspicion supported the protective search where a traffic stop occurred late at night and the officers saw both the driver and passenger lean toward the floor of the car). While the circumstances may have provided the officer with a hunch that the defendant might have been carrying a concealed weapon in the truck, the trial court correctly concluded that they did not establish the objectively

reasonable suspicion necessary to justify a search for weapons.  Consequently, the search of the defendant's vehicle violated his Fourth Amendment rights.

### III.  CONCLUSION

Viewing the record in the light most favorable to the defendant, the Commonwealth did not meet its burden of showing that the circumstances provided Williams a reasonable, articulable, and particularized suspicion that the defendant was armed and dangerous.  Consequently, we affirm the trial court's ruling granting the motion to suppress and remand the case, consistent with this opinion.

<u>Affirmed.</u>