COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Huff and Malveaux
Argued by teleconference

COMMONWEALTH OF VIRGINIA

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 1799-19-2                JUDGE ROBERT J. HUMPHREYS
                                                             APRIL 28, 2020
TYRON J. JOHNSON


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals, Judge

A. Anne Lloyd, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

Abigail L. Paules (David Whaley LLC, on brief), for appellee.


On August 5, 2019, a grand jury indicted appellant Tyron Johnson ("Johnson") in the

Circuit Court of the City of Richmond ("circuit court") on one count of possession of a firearm

after having been convicted of a violent felony, in violation of Code § 18.2-308.2.  Prior to trial,

Johnson filed a motion to suppress evidence derived from his encounter with police on May 21,

2019.  The circuit court granted the motion to suppress, holding that Johnson was seized without

probable cause or reasonable suspicion that a crime was afoot, in violation of the Fourth

Amendment.  The Commonwealth appeals pursuant to Code § 19.2-398(A)(2).

On appeal, the Commonwealth argues that the circuit court erred in suppressing the

physical evidence recovered and evidence derived therefrom because (1) the police were

engaged in a consensual encounter with Johnson; (2) the police had "reasonable, articulable

suspicion to believe that the bulge in Johnson's shirt contained a firearm;" and (3) the police had

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"probable cause to believe that the bulge in Johnson's shirt contained an illegally concealed firearm."

## I.  BACKGROUND

On May 21, 2019 around 10:00 or 11:00 a.m., Officer Khalid Harris ("Officer Harris") patrolled his regularly assigned area near Creighton Court in the City of Richmond, along with Officer Ball and Sergeant Williams.  Officer Harris had been assigned to patrol this area for his entire five-year police career.  Creighton Court is a public housing community with posted "no trespassing" signs where anyone on the property who is not a leaseholder or accompanied by a leaseholder is trespassing.  While driving past Creighton Court, Officer Harris noticed Johnson walking through the courtyard of the property and did not recognize Johnson as a person authorized to be on the property.  However, Officer Harris "had no way of knowing [Johnson was trespassing] until [he] talked to [Johnson]."

After seeing Johnson walk through the courtyard, Officer Harris, in a marked police vehicle, made a U-turn and parked the vehicle along the road outside Creighton Court.  By the time Officer Harris parked the vehicle, Johnson was walking down the sidewalk outside of Creighton Court.  Officer Harris got out of the vehicle and, while approximately five-to-ten feet away from Johnson, called out to Johnson "Yo bossman."  Johnson turned to look toward Officer Harris, dropped his jacket, picked up his jacket, and kept walking down the sidewalk outside Creighton Court.  When Johnson bent down to pick up his jacket, Officer Harris saw a bulge in Johnson's front, left waistband that was completely covered by Johnson's shirt.

Officer Harris then said, "Yo, turn around, you live here?"  Johnson stopped walking and turned as Officer Harris, Officer Ball, and Sergeant Williams approached him.  Johnson responded "Yes."  Officer Harris stood directly in front of Johnson, Officer Ball stood directly behind Johnson, and Sergeant Williams stood on Johnson's side.  All three officers were in

uniform, with badges displayed and their firearms on their waists. None of the officers ever told Johnson he was free to leave.

Officer Harris then asked Johnson for his name, social security number, and date of birth. As he was talking to the officers, Johnson was "fidgeting with his jacket," attempting to turn the left sleeve right-side out and put it on his left arm. Johnson told the officers that his right arm was covered in bandages because he had been shot in that arm.

Officer Harris asked Johnson if Johnson had any weapons on him. Johnson responded that he did not. Officer Harris then told Johnson, "My partner is going to pat you down." Before Officer Ball could conduct a pat-down search, however, Officer Harris lifted Johnson's shirt and revealed a firearm in Johnson's waistband. The officers then placed Johnson in handcuffs. Officer Harris ran Johnson's identification information through the police dispatcher and discovered that Johnson was a convicted felon whose official address was listed as outside Creighton Court.

Johnson was arrested and indicted on one count of possession of a firearm by a person having previously been convicted of a violent felony, in violation of Code § 18.2-308.2. On October 25, 2019, Johnson filed a motion to suppress "all physical evidence recovered and all evidence derived therefrom . . . which were seized as a result of the warrantless seizure and search of [Johnson's] person."

On November 1, 2019, the circuit court held a suppression hearing on the motion. There, Officer Harris testified that he could see a bulge in Johnson's pants when he got out of the vehicle but could only see that it was an "L-shaped" bulge after Johnson turned around and when he was less than three feet away from Johnson. Based on his training and experience in dealing with firearms, Officer Harris testified that the "L-shaped" bulge looked consistent with a firearm and that he believed Johnson was armed. However, Officer Harris also testified that he could not

tell what the bulge was until he lifted Johnson's shirt. The Commonwealth conceded that no pat down occurred.[1]

The circuit court held that Johnson was seized without reasonable articulable suspicion that criminal activity was afoot either because of a trespassing violation or "a concealed weapon or [visible] weapon." The circuit court held, "there has to be some indication that criminal activity is afoot, that he's dangerous in someway. . . . [E]ven if there was reasonable, articulable suspicion for a pat down that's not what occurred here." The circuit court granted the motion to suppress.[2] This appeal follows.

## II. ANALYSIS

### A. Standard of Review

We view the evidence in the light most favorable to Johnson, the prevailing party below, and grant him all reasonable inferences fairly deducible from that evidence. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067 (1991) (citing Commonwealth v. Holloway, 9 Va. App. 11, 20 (1989)). We will not reverse the circuit court's decision unless it is plainly wrong. Id. (citing Code § 8.01-680). However, whether police action amounts to a violation of the Fourth

---

[1] During argument at the suppression hearing, the following conversation occurred:

> THE COURT: I guess we're down to whether or not a bulge, L-shaped object with nothing protruding, not the butt of the gun or anything else, is there a case that says that that's enough and then are you saying that was probable cause or reasonable, articulable suspicion for a pat down?
>
> [Commonwealth Attorney]: I'm saying it was probable cause.
>
> THE COURT: Okay. So, you're jumping to probable cause because you know that there was no pat down.
>
> [Commonwealth Attorney]: Agreed.

[2] The circuit court subsequently issued an order suppressing the evidence on November 5, 2019.

Amendment is "a mixed question of law and fact" that we review *de novo*. Hairston v. Commonwealth, 67 Va. App. 552, 560 (2017) (quoting Harris v. Commonwealth, 276 Va. 689, 695 (2008)).

### B. Johnson's Seizure Under the Fourth Amendment

The Fourth Amendment "secures citizens in their persons and property against unreasonable seizures." Greene v. Commonwealth, 17 Va. App. 606, 610 (1994) (citing Baldwin v. Commonwealth, 243 Va. 191, 195 (1992)). "The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" United States v. Mendenhall, 446 U.S. 544, 553-54 (1980) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)). "Fourth Amendment jurisprudence recognizes three categories of police-citizen [contacts]: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions based upon specific, articulable facts, commonly referred to as Terry stops, and (3) highly intrusive arrests and searches founded on probable cause." Middlebrooks v. Commonwealth, 52 Va. App. 469, 476 (2008) (quoting Blevins v. Commonwealth, 40 Va. App. 412, 420-21 (2003)). While consensual encounters do not implicate the Fourth Amendment, "Terry stops," made pursuant to Terry v. Ohio, 392 U.S. 1 (1968), and more intrusive arrests and searches constitute seizures, requiring compliance with the Fourth Amendment's mandates. McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*).

Within the meaning of the Fourth Amendment, a person is seized when he "is either physically restrained or has submitted to a show of authority." Brown v. City of Danville, 44 Va. App. 586, 603 (2004) (quoting McGee, 25 Va. App. at 199). "In essence, '[w]hether a seizure has occurred for Fourth Amendment purposes depends upon whether, under a totality of

the circumstances, a reasonable person would have believed that he or she was not free to leave.'" Id. (quoting McGee, 25 Va. App. at 199-200). Some of the circumstances relevant to determining whether a person has been seized include

> the threatening presence of a number of police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave.

Id. (quoting Harris v. Commonwealth, 266 Va. 28, 32 (2003)).

The Commonwealth argues that the initial encounter between Johnson and the police was consensual and that, for purposes of the Fourth Amendment, a seizure only occurred when Officer Harris told Johnson he would be patted down. We disagree and conclude, as the circuit court did, that Johnson's encounter with the police was not consensual. After seeing Johnson walk through the courtyard, Officer Harris made a U-turn in his marked police vehicle and parked on the road outside Creighton Court, close to where Johnson was walking. He exited the vehicle and yelled to Johnson "Yo bossman." Johnson briefly turned, dropped his jacket, picked his jacket back up, and kept walking—an indication that he did not willingly choose to speak with the officers.

Officer Harris then, while only five-to-ten feet away and walking toward Johnson with Officer Ball and Sergeant Williams, said to Johnson, "Yo, turn around, you live here?" Because Officer Harris first called out to Johnson, but Johnson ignored him, the fact that Officer Harris immediately responded, "Yo, turn around, you live here?" could be reasonably interpreted as a demand compelling compliance. A reasonable person could conclude, as the circuit court did, that Johnson initially attempted to ignore Officer Harris and a reasonable person would not have felt he or she could have continued to ignore Officer Harris's subsequent demand that Johnson stop and turn around under these circumstances. At that point, there were three uniformed police

- 6 -

officers, with guns displayed at their waists, surrounding Johnson, and Johnson submitted to their show of authority by stopping and turning toward the officers. The officers never told Johnson he was free to leave. Considering the totality of these circumstances, no reasonable person would have believed he or she was free to leave. Accordingly, we hold that Johnson was seized for the purposes of the application of the Fourth Amendment when Johnson complied after Officer Harris called out, "Yo, turn around, you live here?" as three uniformed police officers exited their marked police vehicle and walked toward him.

### C. Search and Seizure of the Firearm

Concluding that Johnson was seized, we turn now to whether the search of his person, and the subsequent seizure of the gun, complied with the Fourth Amendment. The Commonwealth conceded at the suppression hearing that no pat down occurred and, thus, impliedly conceded, as the circuit court concluded, that no Terry-authorized frisk occurred. On appeal, however, the Commonwealth argues that Officer Harris possessed reasonable suspicion, permitting the officers to conduct a limited Terry pat down and that the lifting of Johnson's shirt was a proper frisk pursuant to Terry. We need not decide whether lifting Johnson's shirt was a search or merely a frisk pursuant to Terry because, under familiar appellate standards, "[a] party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." Cangiano v. LSH Bldg. Co., L.L.C., 271 Va. 171, 181 (2006). Accordingly, we consider the lifting of Johnson's shirt by Officer Harris to be a search and the only question we need to resolve in this appeal is whether the officers had probable cause to justify Johnson's seizure and the subsequent search of his person.

"Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Grubbs, 547 U.S. 90, 95 (2006)

(quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  Probable cause may exist to search an individual where an officer, under the totality of the circumstances, has reason to believe that the individual is in possession of contraband or evidence of criminal activity.  See, e.g., Bunch v. Commonwealth, 51 Va. App. 491, 496 (2008) ("[I]f an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana." (quoting United States v. Humphries, 372 F.3d 653, 660 (4th Cir. 2004))).  However, in the absence of additional evidence of criminality, probable cause to seize and search an individual does not exist based *solely* on an officer's experience and suspicion that an objectively legitimate item may also be evidence of a crime.  Harris v. Commonwealth, 241 Va. 146, 155 (1991) (holding the officer lacked probable cause to believe a film canister contained contraband because "law-abiding citizens, on a daily basis, also use film canisters to store film, which is a legitimate use"); Matthews v. Commonwealth, 218 Va. 1, 3 (1977) (holding the officer lacked probable cause to look inside a folded brown paper bag located next to a pack of cigarette wrapping papers because the connection made between the wrapping papers and bag "was not combined with any other circumstance which might have justified a rational belief that the bag contained contraband drugs").  Our Supreme Court

> has consistently declined to find that probable cause can be established solely on the observation of material which can be used for legitimate purposes, even though the experience of an officer indicates that such material is often used for illegitimate purposes. To support a finding of probable cause, such observations must be combined with some other circumstance indicating criminal activity.

Brown v. Commonwealth, 270 Va. 414, 420-21 (2005).  Unless the "incriminating character of the object" is immediately apparent to an officer, the officer is not authorized by Terry or any

other exception to the warrant requirement to conduct a further search without additional information to establish probable cause. Minnesota v. Dickerson, 508 U.S. 366, 379 (1993).

The Commonwealth argues that probable cause for Johnson's seizure and search existed solely because it was apparent to Officer Harris that Johnson was likely armed with a firearm.[3] The problem with the Commonwealth's argument is that, even assuming without deciding that simply seeing a bulge in Johnson's shirt prior to his seizure was enough to suggest that Johnson was carrying a firearm under his shirt, that would not, standing alone, justify Johnson's warrantless seizure or a search of his person.

An individual has a fundamental constitutional right under the Second Amendment to bear arms, and the exercise of that right cannot, without more, establish probable cause for either a search or a seizure under the Fourth Amendment. Therefore, the presence of a bulge under a shirt suggesting one is armed is not automatically indicative of criminal activity. See McDonald v. City of Chicago, 561 U.S. 742, 791 (2010) (incorporating the Second Amendment's individual right to bear arms in the Due Process Clause of the Fourteenth Amendment); District of Columbia v. Heller, 554 U.S. 570, 635 (2008).

As the Supreme Court recognized in Heller, although the Second Amendment does not "protect the right of citizens to carry arms for *any sort* of confrontation" and states may impose limited restrictions on the possession of firearms, "the Second Amendment right is exercised individually and belongs to all Americans." Heller, 554 U.S. at 581, 595. Of course, the Court's holding in Heller did not displace the long-standing precedent that struck a balance between an individual's Fourth Amendment right to be free from unreasonable searches and the risk to

---

[3] Because the Commonwealth did not appeal the circuit court's ruling that the officers did not have reasonable suspicion or probable cause based on trespassing, we may not consider whether probable cause for trespassing might provide additional support for Johnson's seizure or search.

officer safety, particularly the increased risk inherent in traffic stops.  See Pennsylvania v. Mimms, 434 U.S. 106, 111-12 (1977) (recognizing the threat to officer safety during traffic stops and holding that an officer's request that the defendant get out of the vehicle was reasonable under the Fourth Amendment); Bethea v. Commonwealth, 14 Va. App. 474 (1992) (*en banc*) (holding that an officer's directive that a passenger step out of a vehicle was not an unreasonable seizure).

The Commonwealth, like many other states, authorizes individuals to carry a concealed firearm so long as he or she has "a valid concealed handgun permit."  Code § 18.2-308.  But "[t]he very enumeration of the right [to bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon."  Heller, 554 U.S. at 634.  An individual's choice to exercise his fundamental right to bear arms cannot, standing alone, serve as the basis for reasonable suspicion or probable cause that in doing so, he is committing a crime.  Thus, we do not presume that an individual carrying a concealed firearm must be in violation of the law in doing so.  If there are other indicia of criminality present, the presence of a bulge consistent with a weapon can be considered under the totality of the circumstances in determining whether reasonable suspicion or probable cause exist.

Any determination of probable cause is a totality of the circumstances evaluation.  Here, the record before us equates to only one circumstance that the Commonwealth asserts establishes probable cause.  At the time Johnson was seized, the *only* basis for doing so was that Officer Harris could see a bulge in Johnson's waistband.  Therefore, we must determine if Officer Harris's suspicion that the bulge visible in Johnson's shirt might be a gun, standing alone, constitutes probable cause to seize Johnson and conduct a search of his person.

After Johnson was seized and prior to when Johnson was searched, Officer Harris could tell that the bulge was "L-shaped" and suspected that the bulge was a concealed firearm. Johnson did not appear nervous or act furtively.[4]  He cooperated with Officer Harris's command to turn around and answered the officers' questions.  Cf. Whitfield v. Commonwealth, 265 Va. 358, 362 (2003) (holding "[n]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion" and that "[h]eadlong flight, [although] . . . not necessarily indicative of wrongdoing, . . . is certainly suggestive of such" (quoting Illinois v. Wardlow, 528 U.S. 119, 124 (2000))).  The officers were not aware of any complaints that a crime had just been committed by someone matching Johnson's description.  There was no evidence that the officers stopped Johnson for acting suspiciously in a "high crime" or drug market area.  Cf. Hill v. Commonwealth, 68 Va. App. 610, 621 (2018) (recognizing defendant's presence in a "high crime" area as a "relevant contextual consideration in a Terry analysis" (quoting Whitaker v. Commonwealth, 279 Va. 268, 276 (2010))).

In this case, the record reveals no attempt to determine through a database or other source if Johnson lacked or was ineligible for a concealed weapon permit prior to his seizure.  No other circumstances are before us in this record that, in combination, establish probable cause that Johnson was committing a crime prior to his seizure and search.  Officers may not seize and search an individual based solely on the presence of what appears to be a concealed firearm without establishing first that it is concealed in violation of the law.  Accordingly, the mere presence of a bulge that is consistent with the concealed carry of a firearm, without more, does not create probable cause that a crime is being committed.

---

[4] The Commonwealth argues that Johnson's attempt to turn his jacket sleeve right-side out and place his left arm through the sleeve was an attempt to conceal the bulge.  However, the circuit court implicitly rejected that factual finding and viewing the evidence in the light most favorable to Johnson, it is a fair inference that he put his jacket on his left arm first because he had bandages from a gunshot wound on his right arm.

Under the totality of the circumstances limited by the record before us, Officer Harris had nothing more than a belief, however reasonable based on the circumstances, that Johnson was carrying a concealed firearm without any indication as to whether his doing so was illegal. There were no indicia of criminality perfected in this appeal besides a suspicion that Johnson was armed. Without more, there was no probable cause to believe that contraband or evidence of a crime would be uncovered by the search of Johnson's person. Accordingly, the circuit court did not err in finding the officers lacked probable cause and granting the motion to suppress the evidence recovered in the unlawful search.

<u>Affirmed.</u>