COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Ortiz and Chaney
Argued at Norfolk, Virginia


CURTIS BRANDON CORDLE

MEMORANDUM OPINION* BY
v.       Record No. 0484-23-1                    JUDGE VERNIDA R. CHANEY
MARCH 18, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Bryant L. Sugg, Judge

Catherine A. Tatum, Senior Trial Attorney (Newport News Public
Defender's Office, on briefs), for appellant.

Suzanne Seidel Richmond, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Code § 46.2-817(B) makes it a felony, after receiving "a visible or audible signal from

any law-enforcement officer," to fail "to bring [your] motor vehicle to a stop" and drive "in a

willful and wanton disregard of such signal so as to interfere with or endanger the operation of

the law-enforcement vehicle or endanger a person." Curtis Brandon Cordle appeals his

conviction under Code § 46.2-817(B), arguing that it was error to deny his motion to strike

because (1) his vehicle was stopped when he received the signal and (2) he was not detained

under the Fourth Amendment and so was free to leave. Even adopting Cordle's reading of the

statute, the evidence is sufficient to support his conviction because (1) Cordle also received a

signal from law enforcement as he drove away, and (2) the encounter constituted a brief seizure.

This Court, therefore, affirms the circuit court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Newport News police officers Maynard and Geurkova received reports of a possible stolen U-Haul truck at a Walmart. Geurkova drove herself and Maynard to the location. On arrival, Maynard identified a white U-Haul pick-up truck in the Walmart parking lot. Geurkova parked behind the truck.

The officers activated their car's emergency lights, then exited. Maynard reported the truck plate numbers to police dispatch, which matched the plates with a white U-Haul truck reported stolen. The two officers approached the truck, Geurkova on the driver's side and Maynard on the passenger's. Both officers were wearing their uniforms with their badges displayed. Cordle was sitting in the parked truck. Geurkova identified herself to Cordle as Newport News police and asked, "[c]an you turn off the car for me?" Cordle agreed, but then shifted into drive and sped away. He accelerated fast enough to lose traction for several seconds before exiting the parking lot.[2] Geurkova testified she hardly had any time or space to back away from Cordle's truck. Over the course of the encounter, the officers' emergency lights remained activated.

At his bench trial, Cordle moved to strike the Commonwealth's evidence. He argued that, considering how the legislature constructed Code § 46.2-817(B), the felony eluding statute did not apply when his truck was stationary when the police approached. Cordle further contended that, as he was never detained, he was free to leave.

---

[1] "Here, [this Court] examine[s] the evidence in the light most favorable to the Commonwealth, the prevailing party at trial, and grant[s] it the benefit of all reasonable inferences gleaned therefrom." *Durham v. Commonwealth*, ___ Va. ___, ___ (Aug. 1, 2024).

[2] Following his arrest, Cordle called his father from jail and talked about the incident. He recounted how Newport News police had walked up to his truck, saying "it freaked me out. I panicked and yeah, I took off."

The circuit court analogized the situation to driving-under-the-influence, where "operating" a vehicle can be as simple as having the keys in the ignition, even if the vehicle is not moving. The circuit court also noted that Cordle's "engine was [still] on." Thus, interpreting "to bring his vehicle to a stop," the circuit court found that "a reasonable interpretation is not to move the vehicle any further, to disengage the vehicle, rather than to do what [Cordle] did, which was the exact opposite of what the officer asked him to do." The circuit court held that the evidence was sufficient to find Cordle guilty and convicted him of felony eluding under Code § 46.2-817(B).

ANALYSIS

Cordle argues that Code § 46.2-817(B) could not apply when his truck was stationary and that he was never detained and therefore free to leave. We disagree with both arguments. Even if Code § 46.2-817(B) required Cordle's truck to be in motion when he received the signal, he was still receiving that signal as he drove away. Moreover, Code § 46.2-817(B) does not require the Commonwealth to prove that Cordle had been detained. Even if it does, the record sufficiently reflects that such a detention occurred.

I. Finding that Code § 46.2-817(B) applied "even if the vehicle was not in motion when officers approached," if error, was harmless.

Cordle argues that the circuit court erred by finding that Code § 46.2-817(B) criminalized his conduct even when his encounter with the police began while he was parked. This Court reviews questions of statutory interpretation de novo. *E.g.*, *Flores v. Commonwealth*, 82 Va. App. 249, 257 (2024). "[T]he primary objective of statutory construction is to ascertain and give effect to legislative intent." *Brown v. Commonwealth*, 75 Va. App. 388, 405 (2023) (alteration in original) (quoting *Turner v. Commonwealth*, 226 Va. 456, 459 (1983)). "[T]he plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow, or

- 3 -

strained construction." *Creekmore v. Commonwealth*, 79 Va. App. 241, 248 (2023) (quoting *Brown*, 75 Va. App. at 405). Code § 46.2-817(B) provides:

> Any person who, having received a visible or audible signal from any law-enforcement officer *to bring his motor vehicle to a stop*, drives such motor vehicle in a willful and wanton disregard of such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person is guilty of a Class 6 felony.

(Emphasis added).

Cordle notes that no appellate court in Virginia has defined the phrase "to bring his motor vehicle to a stop" and argues that this phrase means that a vehicle must be stopped when a driver receives a signal. He is correct that this language has not been addressed in an appellate decision, but this Court does not need to construe that language now. "Judicial restraint dictates that we decide our cases on the best and narrowest grounds available to us, favoring dispositions tailored to the facts before us over broad pronouncements of law." *Hannah v. Commonwealth*, 303 Va. 106, 121 (2024). We assume without deciding that "bring his motor vehicle to a stop" requires a vehicle to be in motion when a defendant receives a signal. Our inquiry, therefore, becomes focused on Cordle's motion to strike and the sufficiency of the evidence to sustain his conviction.

This Court reviews the circuit court's denial of Cordle's motion to strike with a high degree of appellate deference. *E.g.*, *Durham v. Commonwealth*, ___ Va. ___, ___ (Aug. 1, 2024) ("Where the sufficiency of the evidence is challenged, this Court affords the highest degree of appellate deference to the facts as decided by the initial factfinder."). "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question . . . is whether 'any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction" this Court cannot undermine the circuit court's judgment. *Washington v. Commonwealth*, 75 Va. App. 606, 615 (2022).

The record shows that Cordle's truck was in motion while he received a signal to bring it to a stop. Throughout the encounter, Maynard and Geurkova's emergency lights remained activated as the officers approached in uniform and Geurkova asked Cordle to turn off his car. As the circuit court pointed out:

> [W]hat [the court] think[s] is uncontradicted is that there was a visible signal from the police vehicle, the blue lights.
>
> . . . .
>
> [W]hat the blue lights were there for and who they might have had their attention on before they got out of the vehicle, . . . [i]t would appear . . . there wasn't anybody else there to receive that signal other than [Cordle]. . . .
>
> . . . .
>
> [The court] think[s] it would be clear to him that any blue lights, any visible signal, would have been in reference to him, based on the fact that the officer was at that vehicle and came to his car.

The circuit court could reasonably infer that the meaning of this signal, and Cordle's awareness of it, did not change as he drove away.

The facts here resemble those in *Jones v. Commonwealth*, 64 Va. App. 361, 368 (2015), where this Court upheld a conviction under Code § 46.2-817(B). This Court based its ruling in part on the fact that law enforcement's "lights remained activated throughout [an] encounter in [a] parking lot . . ." and "[o]nce appellant started to drive away," law enforcement "gave additional visible signals to stop." *Id.* There, a law enforcement officer stopped his vehicle just before an intersection, and the appellant stopped behind him. *Id.* at 363. Through the driver side

window, the officer asked Jones and the other occupants "if they needed help or were lost." *Id.* The occupants said that "they were good" and drove off. *Id.* The officer followed the vehicle "to investigate a possible DUI." *Id.*

The officer eventually turned on his emergency lights, and Jones stopped in a parking lot. *Id.* at 364. During the DUI investigation, the officer asked Jones to give him his car keys, but appellant simply "removed the keys from the ignition and 'just kept them in his hand.'" Appellant then restarted the vehicle and drove off with both officers still partway inside the vehicle. *Id.* This Court found the evidence sufficient to support Jones' conviction. *Id.* at 368-69. This Court held that Jones "received a number of visible and audible signals to stop," even explaining that "both officers were partially inside the vehicle as appellant was driving off, which is certainly a visible signal that they wanted appellant to stop." *Id.* at 368. Thus the evidence was sufficient to sustain that Jones received a signal to stop—whether before, while, or after he took his vehicle out of motion.

So too here. Geurkova and Maynard stopped behind Cordle's truck, turned on their emergency lights, and approached Cordle from both sides. Geurkova asked Cordle to turn off his truck, to which he briefly assented before driving off. As Cordle drove away, he continued to receive law enforcement's signal to stop his car. *Compare Jones*, 64 Va. App. at 368. When he drove off, Cordle "panicked" and drove off "at a high rate of speed" while Geurkova was close to his truck and had no room to maneuver. Thus the evidence supports the circuit court's finding that Cordle received a signal to stop, that he drove off in wanton and reckless disregard of that signal, and in so doing endangered a law enforcement officer.

II. Whether Cordle was detained is irrelevant to his conviction under Code § 46.2-817(B).

Cordle argues that, under the Fourth Amendment, he was never detained and so was free to leave. Therefore, he implies,[3] he had a Fourth Amendment right to end his encounter with the police and, presumably, Code § 46.2-817(B) did not apply. We disagree with this for two reasons: first, conviction under Code § 46.2-817(B) does not require proof of a detention, and second, the evidence is sufficient to support a finding that Cordle was, in fact, detained.

We begin with the presumption that the General Assembly enacted a constitutional statute, and thus the presumption that Code § 46.2-817(B) does not conflict with the Fourth Amendment. *See, e.g.*, *Cnty. of Isle of Wight v. Int'l Paper Co.*, 301 Va. 486, 497 (2022) ("It is a settled principle of law that all statutes and ordinances are presumed to be constitutional, and that if there is any doubt such doubt should be resolved in favor of their constitutionality." (quoting *Town of Ashland v. Bd. of Supervisors*, 202 Va. 409, 416 (1961))). "[W]hen statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems." *McKeithen v. City of Richmond*, 302 Va. 422, 435 n.2 (2023) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018)). Cordle has not persuaded this Court that Code § 46.2-817(B) conflicts with the Fourth Amendment.

Keeping the presumption of constitutionality in mind, Code § 46.2-817(B) does not contain a Fourth Amendment detention as an element. The statute's text does not explicitly require anything like a detention. Nor does the text support an inference of such a requirement. Indeed, the statute is predicated on *failing to stop*. It is well-established that, outside an application of force, a Fourth Amendment seizure does not occur until an individual submits to

---

[3] Cordle advanced this implication more clearly during oral argument, but does not do so in his brief.

law-enforcement authority. *See Hill v. Commonwealth*, 68 Va. App. 610, 617 (2018) ("A person is not seized according to the Fourth Amendment until he submits to a police officer's show of authority." (citing, *e.g.*, *McGee v. Commonwealth*, 25 Va. App. 193, 199 (1997) (en banc) ("A seizure occurs when an individual is either physically restrained or has submitted to a show of authority."))). So while a vehicle stop constitutes a detention, Code § 46.2-817(B) contemplates situations where a detention has not been successfully effected.

However, the evidence supports the finding that Cordle *had* been effectively—if briefly—detained. "To determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991).

> The [United States] Supreme Court has provided examples indicating the occurrence of a seizure. These examples include "the threatening presence of several officers, the display of weapon by an officer, some physical touching of the person of the citizen, *or* the use of language or tone of voice indicating that compliance with the officer's request might be compelled."

*Bolden v. Commonwealth*, 263 Va. 465, 471 (2003) (emphasis added) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Here, police officers activated their emergency lights. Two officers approached Cordle in uniform. Geurkova was within arms-length of him and his truck. Geurkova asked Cordle to turn off the truck. When Cordle agreed to give Geurkova his keys, he "submitted," albeit temporarily, "to a show of authority." *See McGee*, 25 Va. App. at 199. No reasonable person would have felt free to leave under these circumstances. The circuit court did not explicitly find this, but strongly implied it: "[T]he officer approaches the defendant and was within inches of him. I think it would be clear to him that any blue lights, any visible

- 8 -

signal, would have been in reference to him, based on the fact that the officer was at that vehicle and came to his car."

Because the record amply supports it, the circuit court would not have erred if it *did* make this finding explicitly. "In instances where a trial court's decision is correct, but its reasoning is incorrect, and the record supports the correct reason, we uphold the judgment pursuant to the right result for the wrong reason doctrine." *Keil v. O'Sullivan*, 81 Va. App. 695, 725 n.11 (2024) (quoting *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 542 (2016)). Assuming that Code § 46.2-817(B) requires showing a seizure, that showing was made and this Court finds the evidence sufficient to support that element.

CONCLUSION

Even adopting Cordle's interpretation of Code § 46.2-817(B), the evidence is sufficient to sustain his conviction. The record shows that Cordle drove away from the officers while receiving a signal to stop his vehicle. The record also supports the finding that Cordle was briefly seized when the officers approached him. Therefore, the circuit court did not err in denying Cordle's motion to strike. Accordingly, this Court affirms the circuit court's judgment.

*Affirmed.*